Thomas R. Curtin
George Jones
GRAHAM CURTIN, P.A.
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
Telephone:     (973) 401-7117
Facsimile:      (973) 292-1767

Paul R. Koepff
Claudia Ray
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:     (212) 326-2000
Facsimile:      (212) 326-2061

*Attorneys for Plaintiffs*
*ACE American Insurance Company,*
*Illinois Union Insurance Company,*
*Westchester Surplus Lines Insurance Company,*
*and Westchester Fire Insurance Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, and WESTCHESTER FIRE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> -against- <br><br> WACHOVIA INSURANCE AGENCY INC. D/B/A E-RISK SERVICES, and SCOTTSDALE INSURANCE COMPANY, <br><br> Defendants. | Civil Action No. <br><br> **MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF PLAINTIFFS' FOR A TEMPORARY RESTRAINING ORDER AND THEIR MOTION FOR A PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................... 2

STATEMENT OF FACTS ..................................................................................................... 4

    The Exclusive Program Business And  The Exclusive Agency Agreement .................... 5

    The Confidential And Proprietary  Information Of Plaintiffs With Respect To
        The Exclusive Agency Agreement ...................................................................... 8

    Wachovia Corp.'s Efforts To  Sell Wachovia Insurance Agency ................................... 10

    Scottsdale's Use Of Confidential  And Proprietary Documents  And Information
        Of Plaintiffs.......................................................................................................... 11

    The Potential Abandonment Or  Discontinuation Of Exclusive Program  Business
        By Wachovia Insurance Agency........................................................................ 12

    The Arbitration Demanded By  The ACE USA Companies .......................................... 13

    The Irreparable Harm That Will Be  Suffered By The ACE USA Companies .............. 13

ARGUMENT ....................................................................................................................... 15

    ALL FACTORS WEIGH IN FAVOR OF  TEMPORARY RESTRAINTS AND
    A PRELIMINARY INJUNCTION................................................................................ 15

    A.  This Court Can Issue A TRO And Preliminary Injunction Notwithstanding
        The Pending Arbitration ...................................................................................... 16

    B.  The ACE USA Companies Have A  Substantial Likelihood Of Success  On
        The Merits Of Each Claim .................................................................................. 18

        The ACE USA Companies Are Likely To  Succeed On Their Claim
            Against Wachovia  Insurance Agency for Breach of Contract............... 18

        The ACE USA Companies Are Likely to  Succeed On Their Claim
            Against Wachovia  Insurance Agency for Breach of Fiduciary
            Duty........................................................................................................ 19

        Plaintiffs Are Likely To Succeed On  Their Claims Against Scottsdale For
            Tortious  Interference With Contractual Relations ................................ 21

        The ACE USA Companies are Likely To  Succeed on Their Claims
            Against Scottsdale  For Misappropriation of Trade Secrets .................. 23

        The ACE USA Companies are Likely  To Succeed on Their Claim
            Against Scottsdale for False Advertising............................................... 25

    C.  The ACE USA Companies Will  Suffer Irreparable Harm If Injunctive  Relief
        Is Not Granted .................................................................................................... 27

    D.  The Balance Of Hardships  Favors The ACE USA Companies................................ 28

**TABLE OF CONTENTS**
**(continued)**

Page

E.  The Issuance of the Requested  Injunction Is In The Public Interest .......................... 29

CONCLUSION........................................................................................................................... 30

## TABLE OF AUTHORITIES

**Page**

### CASES

Abbott Labs. v. Andrx Pharms., Inc.,
  No. 05 C 1490, 2005 WL 1273105 (N.D. Ill. May 20, 2005) ............................................. 15

Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.,
  499 F.2d 232 (2d Cir. 1974)................................................................................................... 25

Bernina of America, Inc. v. Fashion Fabrics Int'l,
  2001 WL 128164 (N.D. Ill. Feb.9, 2001) .......................................................................... 16

Bieros v. Nicola,
  857 F. Supp. 445 (E.D. Pa. 1994) ...................................................................................... 16

BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,
  229 F.3d 254 (3d Cir. 2000)......................................................................................... 27, 28

Bradley v. Pittsburgh Bd. of Educ.,
  910 F.2d 1172 (3rd Cir. 1990) ........................................................................................... 16

Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.,
  236 F. Supp. 2d 1152 (D. Haw. 2002)............................................................................... 16

Cameco, Inc. v. Gedicke,
  690 A.2d 1051 (N.J. App. Div. 1997)................................................................................ 20

FMC Corp. v. Taiwan Tainan Giant Indus. Co.,
  730 F.2d 61 (2d Cir. 1984)................................................................................................. 27

Frederico v. Home Depot,
  507 F.3d 188 (3rd Cir. 2007) ............................................................................................. 18

Ingersoll-Rand Co. v. Ciavatta,
  542 A.2d 879 ( N.J. 1988)................................................................................................... 23

Lamorte Burns v. Walters,
  167 N.J. 285 (2001) ...................................................................................................... 20, 24

Lightning Lube, Inc. v. Witco Corp.,
  4 F.3d 1153 (3d Cir. 1993)............................................................................................ 21, 22

Lockheed Missile & Space Co. v. Hughes Aircraft Co.,
  887 F. Supp. 1320 (N.D. Cal. 1995).................................................................................. 16

Louis Kamm, Inc. v. Flink ,
  113 N.J.L. 582 (E. & A. 1934)........................................................................................... 22

Mastercard In'l Inc. v. Sprint Communications Company,
  No. 94 CIV. 1051, 1994 WL 97097 (S.D.N.Y. March 23, 1994),
  aff'd 23 F.3d 397 (2d Cir. 1994)........................................................................................ 26

Mylan Pharms., Inc. v. Proctor & Gambel Co.,
  443 F. Supp. 2d 453 (S.D.N.Y 2006)................................................................................ 26

Neo Gen Screening, Inc. v. Telechem Int't, Inc.,
  69Fed. Appx. 550, 554-555 (3d Cir. 2003)....................................................................... 27

TABLE OF AUTHORITIES
(continued)

Page

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
Pharmaceuticals Co.,
    290 F.3d 578 (3rd Cir. 2002) ........................................................................................... 16, 31

Ortho Pharma Corp. v. Amgen, Inc.,
    882 F.2d 806 (3rd Cir. 1989) ........................................................................................... passim

Optiacians Assoc. of Am. v. Independent Opticians of Am.,
    920 F.2d 187 (3d Cir. 1990) ............................................................................................ 29

Platinum Management, Inc. v. Dahms,
    666 A.2d 1028 (N.J. Super. Ct. Law Div. 1995) .............................................................. 21

Printing-Mart v. Sharp Electronics Corp.,
    563 A.2d 31 (N.J. 1989) .................................................................................................... 21, 22, 26

Rohm and Haas Co. v. Adco Chemical Co.,
    689 F.2d 424 (3rd Cir. 1982) ........................................................................................... 23, 24, 25

Rycoline Prods., Inc. v. Walsh,
    756 A.2d 1047 (N.J. Super. App. Div. 2000) .................................................................... 23

Sagot Jennings & Sigmond v. Sagot,
    No. 3099 April Term 2002, 2003 WL 1873298 (Pa. Com. Pl. April 2, 2003) .................... 17

Salomon v. Teleplus Enter., Inc.,
    Civ. No. 05-2058, 2008 WL 2277094 (D.N.J. June 2, 2008) ............................................ 20

Scholastic Funding Group LLC v. Kimble,
    Civ. Action No. 07-557, 2007 WL 1231795 (D.N.J. April 24, 2007) ............................... 28, 29

Scoreboard Inc. v. Upper Deck Co.,
    959 F. Supp. 234 (D.N.J. 1997) ........................................................................................ 29

Specialty Bakeries, Inc. v. Halrob, Inc.,
    129 F.3d 726 (3rd Cir. 1997) ........................................................................................... 17

Stiffel Company v. Westwood Lighting Group,
    658 F. Supp. 1103 (D.N.J. 1987) ...................................................................................... 27

Thompson v. Nienaber,
    239 F. Supp. 2d 478 (D.N.J. 2002) .................................................................................. 17

U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,
    898 F.2d 914 (3rd Cir. 1990) ........................................................................................... 25

Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,
    210 F. Supp.2d 552 (D.N.J. 2002) ................................................................................... 18

Wright Medical Technology, Inc. v. George E. Somers,
    37 F. Supp. 2d 673 (D.N.J. 1999) .................................................................................... 17

## STATUTES

15 U.S.C. § 1125(a)(1)(B) ...................................................................................................... 25

Federal Rule of Civil Procedure 65(b) .................................................................................... 15

## TABLE OF AUTHORITIES
### (continued)

### OTHER AUTHORITIES

John J. Bannan, ENCYCLOPEDIA OF NEW JERSEY CAUSES OF ACTION, 2006 WL
    4634490 (2007)........................................................................................................... 23

RESTATEMENT (THIRD) OF AGENCY § 8.01 (2006) ................................................... 20

RESTATEMENT (SECOND) OF TORTS § 874 (1979)...................................................... 23

RESTATEMENT OF TORTS § 757 (1939) ............................................................... 26, 27

Plaintiffs ACE American Insurance Company, Illinois Union Insurance Company, Westchester Surplus Lines Insurance Company, and Westchester Fire Insurance Company (collectively referred to as "Plaintiffs" or the "ACE USA Companies") respectfully submit this memorandum of law in support of their application, pursuant to Fed.R.Civ.P. 65, for an order temporarily restraining and preliminarily enjoining Wachovia Insurance Agency Inc. d/b/a/ E-Risk Services ("Wachovia Insurance Agency") and Scottsdale Insurance Company ("Scottsdale") (collectively the "Defendants") with respect to the improper and inappropriate use of proprietary and confidential information, and property, belonging to Plaintiffs.

This action arises out of Wachovia Insurance Agency's willful, material breaches of the Amended and Restated Agency Agreement (the "Exclusive Agency Agreement") between the ACE USA Companies and Wachovia Insurance Agency for Wachovia Insurance Agency's Professional Liability Program Business (the "Exclusive Program Business"). This agreement is to remain in effect until January 1, 2010.

As set forth below, it appears that Wachovia Insurance Agency and certain of its senior management are engaged in a deliberate effort to strip Wachovia Insurance Agency of its assets by selling them to a new entity to be formed by senior management and depleting the company of its senior management and other employees, who will join the new entity. That entity will thereupon conduct all of the Program Business that Wachovia Insurance Agency was obligated to conduct under the Exclusive Agency Agreement, but instead on behalf of Scottsdale.

Wachovia Insurance Agency will no longer be able to maintain existing Program Business and generate new Program Business, as required under the Exclusive Agency Agreement. Moreover, it is achieving this by breaching the Exclusive Agency Agreement.

1

Among other things, it appears Wachovia Insurance Agency has breached the Exclusive
Agency Agreement by providing Plaintiffs' confidential and proprietary information to
Scottsdale and authorizing Scottsdale to use the trademarks, websites, e-mail addresses and other
indicia associated solely with the Exclusive Program Business. Wachovia Insurance Agency has
also breached the Exclusive Agency Agreement by providing confidential and proprietary
information and trade secrets regarding Program Business to Scottsdale in an effort to get
Scottsdale interested in and committed to being the insurer for this Program Business.

This action also arises out of Scottsdale's apparent improper and inappropriate use of
proprietary and confidential information, as well as property, belonging to the ACE USA
Companies. Among other things, it appears that Scottsdale has filed insurance forms in
numerous states that are the property of the ACE USA Companies, including the Business and
Management (BAM™) package policy offered through Wachovia Insurance Agency (the
"BAM™ Program"). Scottsdale also has apparently tortiously interfered with the Exclusive
Agency Agreement and obtained trade secrets belonging to the ACE USA Companies.

## SUMMARY OF ARGUMENT

Plaintiffs seek a temporary restraining order and preliminary injunction to maintain the
status quo pending the outcome of both this action and an arbitration proceeding that the ACE
USA Companies have commenced against Wachovia Insurance Agency. Absent such emergent
relief, the ACE USA Companies' demanded arbitration will be rendered a "hollow formality".

Preliminary injunctive relief is appropriate here. *First,* the ACE USA Companies will
likely succeed on the merits of their claims. Wachovia Insurance Agency has materially
breached the Exclusive Agency Agreement by providing the ACE USA Companies' proprietary
and confidential information to Scottsdale. Injunctive relief is necessary to ensure that Wachovia

2

Insurance Agency does not take any further steps to in any way provide confidential and proprietary documents and information to Scottsdale or any other third party.

*Second,* the ACE USA Companies will suffer irreparable harm absent injunctive relief with respect to the use of confidential or proprietary documents and information belonging to the ACE USA Companies. As the exclusive carrier writing coverage for the Exclusive Program Business for Wachovia Insurance Agency since October 2002, the ACE USA Companies have developed a strong reputation and goodwill in the industry that also has the broader effect of enhancing the value of Plaintiffs' other insurance program businesses. Defendants' misconduct, if permitted to continue during the pendency of the litigation and arbitration, will cause Plaintiffs significant financial loss and loss of goodwill, as well as the loss of reputational benefits to the ACE USA Companies from being known as the exclusive carrier for the Exclusive Program Business, which harm is not readily calculable or compensable by money damages.

*Third,* the balance of hardships tips decisively in the ACE USA Companies' favor. The ACE USA Companies have spent years and millions of dollars developing the Exclusive Program Business, including developing its confidential and proprietary information. In contrast, Scottsdale has spent no time or effort building the Exclusive Program Business and instead is looking to unfairly benefit from the ACE USA Companies' investment. As a result, Scottsdale stands to lose comparatively little compared to the ACE USA Companies. As for Wachovia Insurance Agency, it will clearly suffer no hardship if the requested relief is granted, as it will simply be required to do what it has contractually promised to do, and what it had apparently been doing until some time during the last few months.

*Fourth,* the public interest favors a preliminary injunction. The public interest is served by protecting confidential and proprietary documents information belonging to the ACE USA

3

Companies, and by reaffirming the importance of compliance with a valid contract such as the Exclusive Agency Agreement.

## STATEMENT OF FACTS

For the last six years, the ACE USA Companies have been the exclusive insurers for Exclusive Program Business pursuant to an agreement that required Wachovia Insurance Agency to be the exclusive producer of such business. (Declaration of David Lupica, sworn to September 2, 2008 (hereinafter "Lupica Dec."), ¶¶ 5, 14-18) From 2002 to 2008, the Exclusive Program Business has increased to approximately $90 million in annual premium, from approximately $47 million. (Lupica Dec. ¶ 5) The ACE USA Companies have developed a significant reputation in the marketplace for coverage provided through the Exclusive Program Business. (Lupica Dec. ¶ 5) Until about July of this year, Wachovia Insurance Agency abided by the Exclusive Agency Agreement and worked well with the ACE USA Companies in maintaining existing Program Business and generating new Program Business. (Lupica Dec. ¶¶ 16, 18.) However, unbeknownst to Plaintiffs, starting in or about July of this year, Wachovia Insurance Agency began to breach the agreement. (Lupica Dec. ¶¶ 6, 18, 56-58.)

Scottsdale has never been in the Program Business. (Lupica Dec. ¶ 44) However, within the last few months, Scottsdale has apparently decided to become the exclusive insurer of the Exclusive Program Business with a new company to be owned by the executive management of Wachovia Insurance Agency. (Complaint ¶ 5) That entity will be formed from the assets of Wachovia Insurance Agency and will use its senior management and employees. (Lupica Dec. ¶ 6) It appears that Scottsdale has obtained and used confidential and proprietary documents and information belonging to the ACE USA Companies, with the knowledge and assistance of

4

Wachovia Insurance Agency. (Lupica Dec. ¶¶ 6.f., 8-9, 44-49; Declaration of Maria Roman, sworn to September 2, 2008 (hereinafter "Roman Dec."), ¶¶ 5-10)

The Exclusive Program Business
And The Exclusive Agency Agreement

On or about January 1, 2002, the ACE USA Companies entered into an exclusive agency agreement with E-Risk Services whereby the ACE USA Companies became the exclusive insurer writing coverage for the Exclusive Program Business. (Lupica Dec. ¶ 14) E-Risk Services became the exclusive agent for the Exclusive Program Business of the ACE USA Companies. At that time, E-Risk Services was an independent agency. (Lupica Dec. ¶ 14)

In or about October 2002, Wachovia Corp. purchased E-Risk Services, which then became a direct subsidiary of Wachovia, known as "Wachovia Insurance Agency, Inc., d/b/a E-Risk Services". (Lupica Dec. ¶ 15) Wachovia Insurance Agency succeeded to the rights and obligations of E-Risk Services under the agency agreement. (Lupica Dec. ¶ 15) Over the next several years, the Exclusive Program Business increased substantially. (Lupica Dec. ¶¶ 5, 16, 18) Both the ACE USA Companies and Wachovia Insurance Agency were more than satisfied with the Agency Agreement, and abided by its terms. (Lupica Dec. ¶¶ 16, 18)

Effective January 1, 2006, Wachovia Insurance Agency and the ACE USA Companies entered into the Amended and Restated Exclusive Agency Agreement; the term of the Exclusive Agency Agreement is from October 1, 2002 until December 31, 2010. (Lupica Dec. ¶ 17 and Ex. 1 at p. 2, Sec. II) Over the next several years, the Exclusive Program Business increased. (Lupica Dec. ¶¶ 5, 16, 18) Both Wachovia Insurance Agency and the ACE Companies were satisfied with the Exclusive Agency Agreement. (Lupica Dec. ¶ 18) Both abided by the terms of the agreement, until several months ago when Wachovia Insurance Agency began to breach the agreement in many different ways. (Lupica Dec. ¶¶ 6, 16, 18, 56-58)

Several provisions in the Exclusive Agency Agreement are relevant to the instant application and motion of the Plaintiffs. In Section I, Wachovia Insurance Agency was appointed General Agent for the Wachovia Insurance Agency Program and granted authority to accomplish, effect and execute duties "upon the terms and conditions set forth" in the Exclusive Agency Agreement. (Lupica Dec. ¶¶ 20 and Ex. 1 at p. 2) As Plaintiffs' General Agent for the Exclusive Program Business, Wachovia Insurance Agency had a fiduciary obligation to act on behalf, and in the best interests, of the ACE USA Companies. (Lupica Dec. ¶¶ 21)

In Section IV.B., Wachovia Insurance Agency agreed that it:

> shall use commercially reasonable efforts to perform all acts necessary for the proper conduct of the Program Business on behalf of Company and shall maintain a staff of competent and trained personnel, supplies and equipment for the purpose of performing Agent's duties under this Agreement.

(Lupica Dec. ¶¶ 23 and Ex. 1 at p. 4) At a minimum, Wachovia Insurance Agency had this obligation until January 1, 2010. (Lupica Dec. ¶¶ 22)

It was always agreed and understood that Wachovia Insurance Agency would use commercially reasonable efforts to maintain existing Exclusive Program Business and produce new Exclusive Program Business. (Lupica Dec. ¶¶ 24) Conversely, Wachovia Insurance Agency is not permitted to assist some other insurer to write any Exclusive Program Business or to file forms, rates, rules or other materials which such other insurer would use to write Exclusive Program Business.

Under Section IV.I.1. ("Ownership of Policy Forms, Printed Matter and Program Data"):

> 1.      Agent will only use policies, endorsements and all other forms approved by Company and the Agent in connection with its duties hereunder. It is expressly understood that any data processing software or data processing technology or applications, policies, endorsements or forms, or data processing software which produces such applications, policies, endorsement, or forms, or any other supplies furnished to Agent by Company shall remain the property of Company. It is expressly understood that any data processing software or data processing technology or applications, policies, endorsements or forms, including

6

but not limited to the Business and Management (BAM) policy form or application, or data processing software or data processing technology which produces such applications, policies, endorsements, or forms, or any other supplies furnished by Agent to the Company shall remain the property of the Agent; provided, however, any applications, policies, endorsements or forms the Company files with any state shall be the property of the Company. Any unused policy numbers shall be the property of Company and shall be surrendered to Company upon its demand.

(Lupica Dec. ¶¶ 25 and Ex. 1 at p. 9. (emphasis added))

Wachovia Insurance Agency also was barred from assisting in any way any other insurer in using or filing any of the applications, policies, endorsements, forms or rating plans which had been filed by or on behalf of the ACE USA Companies with respect to the Exclusive Program Business or which were intended to be filed. Section IV.I.3. provides:

3.     During the term of this Agreement and upon termination of the Agreement, Agent and Company shall treat all Program information listed in Sections IV.I.1. and IV.I.2. that is not publicly available as confidential information and neither party shall disclose, communicate or share such items or information with any third party unless authorized in writing to do so by a court or other governmental authority having jurisdiction. The restrictions contained herein shall not prevent either party from disclosing such information, as mandated by regulatory organizations or courts of law.

(Lupica Dec. ¶¶ 26 and Ex. 1 at p. 9 (emphasis added))

Because this provision mandates that Wachovia Insurance Agency treat all non-public program information as "confidential information", Wachovia Insurance Agency is precluded from disclosing, communicating or sharing such information with any third party unless it first obtains written authorization from Plaintiffs. Wachovia Insurance Agency is also precluded from disclosing trade secrets concerning the Exclusive Program Business to any third party, unless it first obtains written authorization from the ACE USA Companies. Moreover, any company which obtains confidential information or trade secrets from Wachovia Insurance Agency is not entitled to have or use such confidential information in any way, but rather is obligated to return all such confidential information and trade secrets to Plaintiffs.

7

Section IV.I.4. provides:

> 4.      Upon termination of this Agreement, Agent shall promptly return to Company all items and information listed in Sections IV.I.1 and IV.I.2 that are the exclusive property of Company.  Company shall promptly return to Agent all information listed in Sections IV.I.1 and IV.I.2 that is the property of Agent.  The Company shall have the right to retain statistical data for reporting purposes.

(Lupica Dec. ¶¶ 27 and Ex. 1 at p. 9)  This provision underscores that even if the Exclusive

Agency Agreement is terminated, Wachovia Insurance Agency must still honor the

confidentiality provision, but it must also promptly return all confidential items and information,

which "are the exclusive property of [the ACE USA Companies]."

> Under Section IX.A, all records of insurance are the "property" of Plaintiffs:

> A.      Except as otherwise provided in this Section, policyholder lists, including expirations, and their use and control for solicitation of business written or bound by or through Agent shall be the sole and exclusive property of Agent.  <u>Records of insurance including coverage bound, insurance policies and other related information are the property of the Company pursuant to Section IV.I of this Agreement</u>.

(Lupica Dec. ¶ 31 and Ex. 1 at p. 15 (emphasis added))

> Section XXII bars Wachovia Insurance Agency from entering into an agency agreement

with any other carrier during the term of the Exclusive Agency Agreement:

> Agent shall not enter into an agency agreement for Program Business with an entity, other than the Company, during the term of this Agreement. . . .

(Lupica Dec. ¶¶ 33 and Ex. 1 at p. 21)

The Confidential And Proprietary
Information Of Plaintiffs With Respect
<u>To The Exclusive Agency Agreement</u>

> One line of the Exclusive Program Business marketed to prospective insureds is the

Business and Management package policy, marketed under the trademark BAM™ (the "BAM™

Program").  (Lupica Dec. ¶ 35)

8

With respect to the Exclusive Program Business, a substantial amount of confidential and proprietary documents and information have been generated and continue to be generated, including with respect to premiums, rates, losses, loss ratios, reserves, and so on. All of this information is confidential and proprietary, constitutes trade secrets, and may not be disclosed pursuant to the confidentiality provisions of the Exclusive Agency Agreement.

Plaintiffs also provided to Wachovia Insurance Agency certain confidential and proprietary documents and information for use in connection with the Exclusive Program Business, including for the BAM™ Program. (Lupica Dec. ¶ 36; Roman Dec. ¶¶ 13, 14) For example, this reference to the type of package policy is unique to the Exclusive Program Business under the Exclusive Agency Agreement. (Lupica Dec. ¶ 35; Roman Dec. ¶¶ 13, 14) It is the position of the ACE USA Companies that Wachovia Insurance Agency may not authorize or permit some other insurer to make reference to this terminology, including in any filings with state insurance departments. (Lupica Dec. ¶¶ 35-36; Roman Dec. ¶¶ 11-14)

These references appeared in the ACE USA Companies' application documents, policies, and other forms containing rate information bearing the trademarks, such as BAM™, and other indicia of the Exclusive Program Business and/or Plaintiffs. (Lupica Dec. ¶¶ 35-36; Roman Dec. ¶ 13) It is the position of the ACE USA Companies that Wachovia Insurance Agency may not disclose or share this information with some other insurer, or permit some other insurer to utilize these documents or information in deciding to become an insurer of the program or in making filings with state insurance departments. (Lupica Dec. ¶¶ 35-36; Roman Dec. ¶¶ 11-14)

The ACE USA Companies also provided Wachovia Insurance Agency with its own underwriting, loss and/or actuarial documents and information, as well as other confidential and proprietary documents and information for use by Wachovia Insurance Agency in connection

9

with its operation of the Exclusive Program Business, including without limitation in quarterly pricing reports, monthly effective rate change reports, large loss reports, and monthly specific claim information and reports. (Lupica Dec. ¶ 37) It is Plaintiffs' position that Wachovia Insurance Agency cannot provide or share any such underwriting, loss or actuarial documents and information to some other insurer like Scottsdale. (Lupica Dec. ¶ 37)

## Wachovia Corp.'s Efforts To
## Sell Wachovia Insurance Agency

In Spring 2008, Wachovia Corp. considered selling Wachovia Insurance Agency Services. (Lupica Dec. ¶ 38) In May 2008, the ACE USA Companies offered to purchase Wachovia Insurance Agency, but Wachovia Corp. declined that offer. (Lupica Dec. ¶ 39) In no later than July 2008, Wachovia Corp. considered a bid for Wachovia Insurance Agency submitted by members of its executive management. (Lupica Dec. ¶ 40) The ACE USA Companies were told about this effort by representatives of Wachovia Corp. (Lupica Dec. ¶¶ 40)

At the same time, unbeknownst to the ACE USA Companies, senior management of Wachovia Insurance Agency apparently had discussions with Scottsdale to have it be the exclusive insurer for the Exclusive Program Business following the sale of assets by Wachovia Insurance Agency. (Lupica Dec. ¶¶ 6-8, 42, 49-50.) To interest Scottsdale in doing so and to obtain its commitment to be the exclusive insurer, senior management of Wachovia Insurance Agency apparently provided trade secrets and confidential and proprietary information about the Exclusive Program Business, breaching the Exclusive Agency Agreement. (Lupica Dec. ¶¶ 6-8, 49-50.)

During discussions with Scottsdale, in breach of the Exclusive Agency Agreement, Wachovia Insurance Agency apparently provided confidential and proprietary documents and information to Scottsdale for use by Scottsdale in its filings with insurance departments about

Exclusive Program Business. (Lupica Dec. ¶¶ 6-8, 49-50.) Thereby, Scottsdale had access to trade secrets and protected property rights which it used in making filings with state insurance departments, which filings are unauthorized, improper and inappropriate. (Lupica Dec. ¶¶ 6-8, 49-50.)

Scottsdale's Use Of Confidential
And Proprietary Documents
<u>And Information Of Plaintiffs</u>

In early May 2008, Scottsdale, which had never previously sold coverage such as that provided by Plaintiffs under the Exclusive Program Business, made certain filings with various state insurance departments. (Lupica Dec. ¶¶ 45) These Scottsdale filings are identical or substantially the same as the filings made by and on behalf of the ACE USA Companies with respect to the Exclusive Program Business, including specifically the BAM™ Program offered by Wachovia Insurance Agency. (Lupica Dec. ¶¶ 46; Roman Dec. ¶¶ 5-6) They include the rates, rating plan, policy form and applications for the Exclusive Program Business, all containing the BAM™ Program name. (Lupica Dec. ¶¶ 46; Roman Dec. ¶¶5, 6, 13) In this action, the ACE USA Companies contend that Scottsdale's filings were not based on publicly available information obtained from state insurance departments, that they were based on Plaintiffs' modified form of application currently being used for the Exclusive Program Business, and that the modified application form contained new and revised questions than those forms filed with the insurance departments. (Lupica Dec. ¶¶ 47) In its filings, Scottsdale uses the term "E-Risk Services™", has a website entitled "www.ERisk Services.com", has an email address for applications entitled application@ERiskServices.com, and uses the term "Business Management (BAM™) Indemnity Insurance." (Lupica Dec. ¶ 48; Roman Dec. ¶¶ 12-14) The filings were done without Plaintiffs' prior approval or consent, and Wachovia Insurance Agency did not advise Plaintiffs of what it had provided to Scottsdale in making these filings.

11

The ACE USA Companies became concerned that Wachovia Insurance Agency had violated the terms of the Agreement by (a) conducting Exclusive Program Business with another carrier; and (b) by providing Plaintiffs' confidential and proprietary documents and information to Scottsdale without their authorization. (Lupica Dec. ¶ 49)  The ACE USA Companies also became concerned by Scottsdale's use of the trademarks and other indicia associated with the Exclusive Program Business which suggested that it was falsely and misleadingly representing that it, and not Plaintiffs, was the exclusive carrier for the Exclusive Program Business.  (Lupica Dec. ¶ 49)  An exchange of correspondence between Plaintiffs and Wachovia Insurance Agency and Scottsdale followed, which failed to explain how Scottsdale came to be in possession of the ACE USA Companies' confidential and/or proprietary materials, to make filings incorporating those materials, and to use the BAM™ and E-RISK™ trademarks as well as other indicia long-associated with the Exclusive Program Business.  (Lupica Dec. ¶¶ 49-53 and Exs. 2-3, 6-7 )

The Potential Abandonment Or
Discontinuation Of Exclusive Program
Business By Wachovia Insurance Agency

By letter dated August 14, 2008, Wachovia Insurance Agency advised the ACE USA Companies that Wachovia had entered into a Letter of Intent to sell the assets of its subsidiary, Wachovia Insurance Agency, not including the ACE USA Companies' proprietary materials, to a management led group.  (Lupica Dec. ¶ 65 and Ex. 10.)  Wachovia also advised that the Exclusive Agency Agreement was not being assigned by Wachovia Insurance Agency to the new entity to be formed by the executive management of Wachovia Insurance Agency, and that the current executive management would no longer be employed by Wachovia Insurance Agency following the proposed transaction.  (Lupica Dec. ¶ 66 and Ex. 10.)

By letter dated August 15, 2008, Plaintiffs' counsel asked Wachovia to confirm that it would not assign the Exclusive Agency Agreement to the new entity that was buying Wachovia

12

Insurance Agency's assets. (Lupica Dec. ¶ 68 and Ex. 11.) Plaintiffs' counsel also asked

Wachovia to confirm that it was abandoning the Exclusive Program Business under Section

VIII.C.4 of the Exclusive Agency Agreement, which provided for immediate termination of the

Exclusive Agency Agreement by the ACE USA Companies in the event the Exclusive Program

Business was discontinued. (Lupica Dec. ¶¶ 68 and Ex. 12.)

The Arbitration Demanded By
The ACE USA Companies

    The Exclusive Agency Agreement requires that the parties arbitrate differences in

opinions or interpretations of that agreement. By an Arbitration Demand and Statement of

Claims, dated September 2, 2008, therefore, the ACE USA Companies commenced an

arbitration against the Wachovia Insurance Agency. (Lupica Dec. ¶ 71 and Ex. 10) Except for

seeking a temporary restraining order and preliminary order in this action, the ACE USA

Companies are not pursuing any other claims against Wachovia Insurance Agency.

The Irreparable Harm That Will Be
Suffered By The ACE USA Companies

    In this action, the ACE USA Companies contend that Wachovia Insurance Agency has

committed a series of continuing breaches of its obligations under the Exclusive Agency

Agreement that have caused and will continue to cause irreparable harm to the ACE USA

Companies, including without limitation:

    (a)    Providing or sharing trade secrets and confidential and proprietary documents and information with respect to the Exclusive Program Business to Scottsdale in order to interest Scottsdale in and get Scottsdale to become an insurer of the same insurance provided by the ACE USA Companies under the Exclusive Program Business. After reviewing such information, Scottsdale agreed to do so.

    (b)    Providing and sharing other confidential and proprietary documents and information with respect to Exclusive Program Business, which Scottsdale then used in whole or in part to make certain filings with various state insurance departments.

13

(c)     Allowing Scottsdale to use protected property rights which were for exclusive use pursuant to the Exclusive Agency Agreement, which Scottsdale then used in making certain filings with various state insurance departments.

(d)     Allowing and assisting Scottsdale in holding itself out as an authorized insurer for the Exclusive Program Business, which Scottsdale then used in its filings.

(e)     Providing confidential and proprietary information of the ACE USA Companies to Scottsdale.

(Lupica Dec. ¶ 56.)

If Wachovia Insurance Agency and Scottsdale are not prevented from continuing to pursue these activities in breach of the Exclusive Agency Agreement, including using the ACE USA Companies' confidential and proprietary materials to compete with the ACE USA Companies in breach of the Agreement's exclusivity provision, the ACE USA Companies will suffer significant and irreparable harm.

First, the ACE USA Companies have lost and will continue to lose the goodwill that has accrued as a result of the Exclusive Program Business and the reputation they have developed in the marketplace as a result of their having long been known as the sole carrier for the Exclusive Program Business (which has approximately doubled in size since the ACE USA Companies became the exclusive carrier in 2002). (Lupica Dec. ¶ 74) The ACE USA Companies have been identified for the last six years and are currently identified as the sole insurers with respect to the Exclusive Program Business under the Exclusive Agency Agreement with Wachovia Insurance Agency. (Lupica Dec. ¶ 75) However, that competitive advantage is being lost and will continue to be lost unless Wachovia Insurance Agency and Scottsdale are enjoined from identifying Scottsdale as the insurer for such Exclusive Program Business. (Lupica Dec. ¶ 75)

Second, the Exclusive Program Business has been and is associated with Plaintiffs' property and casualty business, and such business has been and will continue to be damaged as a result of the conduct of Wachovia Insurance Agency and/or Scottsdale. (Lupica Dec. ¶ 76)

14

Third, Wachovia Insurance Agency and Scottsdale have available to them all of the confidential and proprietary information relating to the Program Business, including not only individual customer files but also the loss and actuarial data, which would provide them with a significant and improper advantage in seeking renewal or new business. (Lupica Dec. ¶ 77)

Finally, even if Plaintiffs were to continue in the Program Business, they would have to recreate all of the systems that E-Risk and Scottsdale would already have available to them, putting Plaintiffs at a significant competitive disadvantage. (Lupica Dec. ¶¶ 78)

In addition to these harms, Wachovia Insurance Agency is breaching the Exclusive Agency Agreement by preventing and restricting the ACE USA Companies from obtaining data and information that the ACE USA Companies absolutely need to properly discharge their obligations under various statutes and regulations of the various states and to properly discharge their contractual obligations to their policyholders. For example, for more than two weeks prior to the filing of this action, Wachovia Insurance Agency has precluded the ACE USA Companies from accessing and utilizing a computer system, known as "Citrix", containing important information about insureds, insurance policies, underwriting information and claims information, purportedly because the system is not functioning. The Wachovia Insurance Agency must be ordered to cooperate fully and in all respects in order that the ACE USA Companies can discharge their statutory, regulatory and contractual obligations.

## ARGUMENT

### ALL FACTORS WEIGH IN FAVOR OF
### TEMPORARY RESTRAINTS AND A PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65(b) gives federal courts the power to grant a temporary restraining order ("TRO") where necessary. A TRO "is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction." Abbott

15

Labs. v. Andrx Pharms., Inc., No. 05 C 1490, 2005 WL 1273105, at * 1 (N.D. Ill. May 20,

2005); Ortho Pharma Corp. v. Amgen, Inc., 882 F.2d 806, 813 (3rd Cir. 1989) (noting that "the

'preservation of the *status quo*' represents the goal of preliminary injunctive relief in any

litigation, including in an arbitrable dispute").

The standard for a temporary restraining order is the same as that for a preliminary

injunction. See Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994); Brown Jordan Int'l,

Inc. v. Mind's Eye Interiors, Inc., 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); Bernina of

America, Inc. v. Fashion Fabrics Int'l, No. 01 C 505, 2001 WL 128164, at *1 (N.D. Ill. Feb.9,

2001); Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D.

Cal. 1995). Thus, the Court may grant an application for a temporary restraining order and a

preliminary injunction if Plaintiffs show (i) a reasonable likelihood of success on the merits; (ii)

irreparable harm; (iii) that the balance of the hardships tips in its favor; and (iv) the injunction is

in the public interest. See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck

Consumer Pharm. Co., 290 F.3d 578, 586 (3rd Cir. 2002); Ortho Pharma Corp., 882 F.2d at 812-

13; Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175 (3rd Cir. 1990).

A.     This Court Can Issue A TRO And
       Preliminary Injunction Notwithstanding
       The Pending Arbitration

Plaintiffs are entitled to injunctive relief against Wachovia Insurance Agency to maintain

the status quo, and to prevent it from taking further actions in violation of the Exclusive Agency

Agreement, pending the outcome of the arbitration commenced by Plaintiffs. The Third Circuit

has clearly held that a party may seek injunctive relief in order to maintain the status quo

pending the outcome of an arbitration proceeding. See Ortho Pharma. Corp. v. Amgen, Inc., 882

F.2d 806, 812 (3rd Cir. 1989) (a court has authority to grant injunctive relief to preserve the

status quo pending arbitration where the traditional prerequisites for such relief are satisfied).

The applicable factors that a movant must show to prevail on such a motion are: (i) a likelihood of success in the underlying litigation, (ii) that it would be irreparably injured while the arbitration is pending absent an injunction to prevent a change in the *status quo*, (iii) possible harm to other interested persons resulting from the denial or grant of the injunction, and (iv) that the public interest favors the grant of injunctive relief. Id. at 813.

A finding that an injunction is necessary to preserve the *status quo* and avoid rendering the arbitration a "hollow formality" is analogous to a finding that the movant would suffer irreparable injury absent injunctive relief. Id. at 815. In other words, the central requirement for injunctive relief – irreparable injury – is no different where the movant seeks an injunction pending arbitration. See, e.g., Specialty Bakeries, Inc. v. Halrob, Inc., 129 F.3d 726 (3rd Cir. 1997) (affirming grant of preliminary injunction to franchisor pending arbitration with franchisee and directing district court to modify injunction to permit parties to seek change in the *status quo* to the extent necessary to prevent nullification of the arbitration process); Sagot Jennings & Sigmond v. Sagot, No. 3099 April Term 2002, 2003 WL 1873298 at *1 (Pa. Com. Pl. April 2, 2003) (issuing injunction requiring defendant to maintain all relevant files pending arbitration between law firm and former partner); see also Thompson v. Nienaber, 239 F. Supp. 2d 478 (D.N.J. 2002) (noting that although federal courts' jurisdiction is limited to staying a pending action and compelling arbitration, most federal circuits permit federal courts to consider whether injunctive relief is necessary to maintain the *status quo* pending arbitration); Wright Medical Tech., Inc. v. Somers, 37 F. Supp. 2d 673 (D.N.J. 1999) (applying Tennessee substantive law and granting injunction pending arbitration under the standard articulated in Ortho where manufacturer of medical implants would be irreparably injured by loss of goodwill, customers and business opportunities in light of breach of exclusive distributor agreement).

17

Here, the ACE USA Companies are essentially in the same position as was the moving party in Ortho Pharma. Corp. v. Amgen, Inc.: they need a TRO and preliminary injunction to preserve the status quo and avoid rendering the pending arbitration a "hollow formality". It likely will take weeks if not months before a three-person arbitration tribunal is formed, and even then it is far from clear that the three members would all be available on a particular day or days to resolve a TRO application and then a preliminary injunction. In the interim, Wachovia Insurance Agency would be free to continue proving confidential and proprietary documents and information to Scottsdale, and working with it in violation of the Exclusive Agency Agreement. Under Ortho, a federal district court has the power to prevent this from happening.

B.    The ACE USA Companies Have A
      Substantial Likelihood Of Success
      On The Merits Of Each Claim

The first element that Plaintiffs must show is a reasonable likelihood of success on the merits in the underlying arbitration. Ortho Pharma. Corp., 882 F.2d at 813. That requirement is clearly met in light of Wachovia Insurance Agency's recent conduct in disclosing Plaintiffs' confidential and proprietary information to a third party, and working with that Third Party in violation of the exclusive Agency Agreement.

The ACE USA Companies Are Likely To
Succeed On Their Claim Against Wachovia
Insurance Agency for Breach of Contract

Plaintiffs can clearly establish that Wachovia Insurance Agency materially breached the Exclusive Agency Agreement between the parties and is therefore liable to them for breach of contract. To establish this claim under New Jersey law, a plaintiff must prove that (i) a contract existed between the parties; (ii) the claimant performed its own contractual obligations; (iii) the defendant breached the contract; and (iv) damages resulted there from. Frederico v. Home

18

Depot, 507 F.3d 188, 203 (3rd Cir. 2007) (citing Video Pipeline, Inc. v. Buena Vista Home
Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

As set forth above, Wachovia Insurance Agency has materially breached the Exclusive
Agency Agreement in numerous ways, including without limitation: (i) assisting Scottsdale in
filing policy forms, rules, rates and plans so that Scottsdale can engage in Exclusive Program
Business; (ii) assisting Scottsdale in other ways so that Scottsdale can engage in Exclusive
Program Business; (iii) providing or disclosing trade secrets with respect to Exclusive Program
Business to Scottsdale; (iv) providing or disclosing confidential and proprietary documents and
information with respect to Exclusive Program Business to Scottsdale; (v) providing Plaintiffs'
confidential and proprietary information to Scottsdale, (vi) authorizing Scottsdale's use of
trademarks and other indicia that have for many years been associated with the Exclusive
Program Business to make it appear Scottsdale is an authorized insurer with respect to Exclusive
Program Business; (vii) essentially stripping Wachovia Insurance Agency of all assets and
condoning the departure of senior management and employees with the result that Wachovia
Insurance Agency cannot maintain existing Program Business or generate new Program
Business; and (viii) restricting or preventing or inhibiting Plaintiffs from having full and
complete access to the "Citrix" system, thereby seriously impeding their ability to discharge
properly their statutory and regulatory obligations and their contractual obligations to
policyholders.  (Lupica Dec. ¶¶ 6, 46-49, 56-58; Roman Dec. ¶¶ 7, 10-14)

> The ACE USA Companies Are Likely to
> Succeed On Their Claim Against Wachovia
> Insurance Agency for Breach of Fiduciary Duty

The ACE USA Companies clearly can establish that Wachovia Insurance Agency
materially breached the fiduciary obligations that it owes to the ACE USA Companies under the
Exclusive Agency Agreement and is therefore liable to the ACE USA Companies for Breach of

19

fiduciary duty. To establish a claim for breach of fiduciary duty under New Jersey law, a plaintiff must establish that (i) a fiduciary relationship exists, (ii) defendant breached its duty including the duty of good faith and loyalty; and (iii) such breach resulted in harm to plaintiff. See McKelvey v. Pierce, 800 A.2d 840, 859-60 (N.J. 2002). "A fiduciary relationship arises between two [entities] when one [entity] is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." Id. at 859 (citing RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979)).

A party may breach its fiduciary duty to another if it fails to exercise good faith in its relationship with the principal by disclosing confidential information given to the agent by the principal; or by acting for another if such conduct significantly tends to cause the agent to ignore his or her duty to act for the principal's purpose. See John J. Bannan, ENCYCLOPEDIA OF NEW JERSEY CAUSES OF ACTION, 2006 WL 4634490 (2007); Cameco, Inc. v. Gedicke, 690 A.2d 1051, 1057 (N.J. App. Div. 1997) ("Solicitation of an employer's customers or potential customers, and other similar acts in direct competition with the employer's business constitute a breach of the employee's duty of loyalty") (internal quotations omitted).

Here, Wachovia Insurance Agency owes a duty, as the exclusive agent under the Exclusive Agency Agreement, to act on behalf, and in the best interests, of the ACE USA Companies. See Salamon v. Teleplus Enter., Inc., Civ. No. 05-2058, 2008 WL 2277094, at *13 (D.N.J. June 2, 2008) ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship.") (quoting RESTATEMENT (THIRD) OF AGENCY § 8.01 (2006)). Wachovia Insurance Agency has breached that fiduciary obligation to the ACE USA Companies, including the duty of loyalty and good faith, by, among other things, disclosing the ACE USA Companies' confidential and proprietary information to Scottsdale, and

20

assisting and supporting Scottsdale in entering into the Exclusive Program Business. Lamorte Burns & Co. v. Walters, 770 A.2d 1158, 1168-69 (N.J. 2001) (holding that former employees of insurance company breached their duty of loyalty to the former employer, where employees used insurance company's confidential customer information to start a competing business).

> Plaintiffs Are Likely To Succeed On
> Their Claims Against Scottsdale For Tortious
> Interference With Contractual Relations

To succeed on its claim against Scottsdale for tortious interference with contractual relations, the ACE USA Companies must show that: (i) they had a contract with Wachovia Insurance Agency; (ii) Scottsdale was aware of the contract; (iii) Scottsdale knowingly and intentionally interfered with that contract without justification; (iv) the ACE USA Companies would have received the benefit of that contract absent Scottsdale's interference; and (v) the ACE USA Companies incurred damages as a result of Scottsdale's interference. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993); Printing-Mart v. Sharp Elec. Corp., 563 A.2d 31, 37 (N.J. 1989); Platinum Mgmt. Inc. v. Dahms, 666 A.2d 1028, 1043 (N.J. Super. Ct. 1995).

There can be no serious dispute that the ACE USA Companies and Wachovia Insurance Agency had an existing contractual relationship and that Scottsdale interfered with that relationship. The Exclusive Agency Agreement was signed on January 1, 2006 and was not set to expire until December 31, 2010. (Lupica Dec. ¶¶ 17, 22) Wachovia Insurance Agency was the exclusive agent for the Exclusive Program Business pursuant to the Exclusive Agency Agreement. (Lupica Dec. ¶¶ 5, 17, 33) Plaintiffs are well known in the marketplace as the exclusive carrier for the Exclusive Program Business. (Lupica Dec. ¶¶ 5, 60-61) Despite this, Scottsdale apparently still pursued an arrangement with Wachovia Insurance Agency to provide insurance coverage for the Exclusive Program Business. (Lupica Dec. ¶¶ 6, 44-49, 56)

21

An action for tortious interference with prospective business relations protects the right to "pursue one's business, calling or occupation free from undue influence or molestation." Printing-Mart, 563 A.2d at 36 (quoting Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 586 (E. & A. 1934). Although businesses may compete fairly with each other, they may not act with the malicious purpose of harming a competitor's business. Lightning Lube, 4 F.3d at 1167. Scottsdale's conduct in entering into an agreement with Wachovia Insurance Agency to provide the identical program coverage that the ACE USA Companies had been providing, utilizing the trademarks and proprietary forms and information that had been used for the Exclusive Program Business, clearly interfered with Plaintiffs' exclusive contractual relations with Wachovia Insurance Agency. They had a reasonable expectation that Wachovia Insurance Agency would continue to act as the ACE USA Companies' general and exclusive agent for Exclusive Program Business as it had for almost six years and was obligated to do pursuant to the Exclusive Agency Agreement until at least December 31, 2010. (Lupica Dec. ¶¶ 5, 17, 20-22, 33)

Moreover, the ACE USA Companies had a reasonable expectation that Wachovia Insurance Agency would refrain from providing its confidential and proprietary information to any competitor in accordance with the terms of the Exclusive Agency Agreement. (Lupica Dec. ¶¶ 25-32) Scottsdale necessarily was aware of the ACE USA Companies' expectation and of the Exclusive Agency Agreement, but nevertheless, wrongfully and intentionally interfered with that expectation. (Lupica Dec. ¶¶ 25-32, 36-37) Absent such interference, the ACE USA Companies would have continued to enjoy the advantages they reasonably expected to obtain from the Exclusive Agency Agreement as well as the protections it provided for their proprietary forms and information. Printing-Mart v. Sharp Elec. Corp., 563 A.2d at 37 (plaintiff's reasonable expectation of economic interest includes an interest in prospective sales).

The ACE USA Companies are Likely To
Succeed on Their Claims Against Scottsdale
For Misappropriation of Trade Secrets

As stated above, Scottsdale misappropriated valuable trade secrets with respect to Exclusive Program Business when it apparently used Plaintiffs' confidential and proprietary documents and information to make state insurance filings for Exclusive Program Business. Under New Jersey law, a trade secret may consist of any formula, pattern, device or compilation of information that is used in one's business and gives one an opportunity to obtain an advantage over competitors who do not know or use it. Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424, 431 (3rd Cir. 1982) (citing RESTATEMENT OF TORTS § 757 comt. b (1939)). It must "be the secret of a particular employer and not a matter of general knowledge in the industry." Id.

To determine whether particular information constitutes a trade secret, courts consider: (i) the extent to which the information is known outside of the owner's business; (ii) the extent to which it is known by employees and others involved in the business; (iii) the extent of measures taken by the owner to guard the secrecy of the information; (iv) the value of the information to the owner and its competitors; (v) the amount of effort or money expended to develop the information; and (vi) the ease or difficulty with which the information could be acquired or duplicated by others. See Rycoline Prods., Inc. v. Walsh, 756 A.2d 1047, 1053 (N.J. Super. App. Div. 2000) (quoting RESTATEMENT OF TORTS § 757 com. b (1939)); Ingersoll-Rand Co. v. Ciavatta, 542 A.2d 879, 893 (N.J. 1988).

To prevail on a claim for misappropriation of a trade secret, a plaintiff must establish that: (i) a trade secret exists; (ii) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (iii) the secret information was disclosed by that employee in breach of that confidence; (iv) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (v) the secret information was used by

23

the competitor to the detriment of the plaintiff; and (vi) the plaintiff took precautions to maintain the secrecy of the trade secret. Rohm and Haas Co. v. Adco. Chem. Co., 689 F.2d at 429-30. "[I]nformation need not rise to the level of a trade secret to be protected." Lamorte Burns v. Walters, 770 A.2d 1158, 1166 (N.J. 2001). Instead, confidential information is "'entitled to protection when divulged in confidence to a key employee . . . where [defendant] is a party to a covenant not to compete.'" (citations omitted). Id.

The ACE USA Companies are entitled to have their confidential information protected as a trade secret. The ACE USA Companies have developed numerous forms, rates, policies and other information that is confidential and proprietary to Plaintiffs. (Roman Dec. ¶¶ 8-9) The ACE USA Companies' confidential information satisfies the elements necessary to be considered trade secrets. See Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1168-69 (N.J. 2001) (finding that confidential information gathered by employees from insurance files, including customer contact information and details concerning customers accidents, are entitled to trade secret protection). It is equally clear that Scottsdale has misappropriated the ACE USA Companies' trade secrets, which were communicated to Wachovia Insurance Agency in confidence as evidenced by the express terms of the Exclusive Agency Agreement, and which Wachovia Insurance Agency was expressly obligated not to disclose without Plaintiffs' written consent. (Lupica Dec. ¶¶ 25-32 and Ex. 1 at pp. 9, 15) Scottsdale must have been aware of the Exclusive Agency Agreement when it entered into its arrangement with Wachovia Insurance Agency and utilized the ACE USA Companies' forms and information to write competing program business. Further, as discussed above, Scottsdale has used the trade secrets that it has taken from Plaintiffs to the detriment of Plaintiffs. (Lupica Dec. ¶¶ 45-47, 63) Indeed, Scottsdale secretly commenced writing competing program business using the ACE USA

24

Companies' forms and information via the ACE USA Companies' existing exclusive agent to divert business from the ACE USA Companies. (Lupica Dec. ¶¶ 6, 44-49; Roman Dec. ¶¶ 7, 8) In view of the foregoing, the ACE USA Companies will likely succeed on the merits of their claim for misappropriation of trade secrets. Rohm and Haas, 689 F.2d 424, 429-433 (holding that defendant misappropriated plaintiff's trade secret process for making latex paint compound when it clearly had obtained the process from a former employee of plaintiff who was privy to such information).

> The ACE USA Companies Are Likely
> To Succeed On Their Claim Against
> Scottsdale For False Advertising

To succeed on their claim for false advertising, the ACE USA Companies must show that (i) Scottsdale made a false or misleading statement, or representation of fact, in advertising; (ii) which actually deceives or had a tendency to deceive a substantial segment of its audience; (iii) such deception is material in that it is likely to influence the purchasing decision of consumers; (iv) the statement concerns goods, services, or commercial activities, in interstate commerce, of the defendant, or another person; and (v) the ACE USA Companies have been, or are likely to be injured as a result of the false advertising, either because of a loss in sales, or a diversion of goodwill. 15 U.S.C. § 1125(a)(1)(B); U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 922 -23 (3rd Cir. 1990); see Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc., 499 F.2d 232, 236 (2d Cir. 1974) ("[S]ection 43(a) provide[s] a federal remedy for the tort of false advertising to the detriment of a competitor as set forth in the Restatement of Torts") (internal quotations omitted). The ACE USA Companies can make such a showing.

Scottsdale, acting in concert with Wachovia Insurance Agency, has used the BAM™ and E-RISK™ trademarks, and other indicia and designations of origin, both in insurance filings and on its website to falsely and misleadingly advertise and suggest that it is the exclusive carrier for

25

the Exclusive Program Business, when in fact Plaintiffs are the exclusive carrier by reason of the Exclusive Agency Agreement. As set forth above, Scottsdale has used the BAM™ and E-Risk Services™ trademarks the filings that it has made or caused to be made on its behalf for Exclusive Program Business. (Lupica Dec. ¶ 46; Roman Declaration ¶¶ 10-14) Moreover, Scottsdale also has a website entitled "www.ERisk Services.com" and utilizes the application@ERiskServices.com for customer applications. (Lupica Dec. ¶¶ 48) Both the domain name and email address are registered to Wachovia Insurance Agency and are supposed to be used for Exclusive Program Business. (Roman Dec. ¶¶ 11-12) The term "Business Management (BAM™) Indemnity Insurance" also features on Scottsdale's website. (Lupica Dec. ¶ 48) Scottsdale's actions in holding itself out as the insurer for the Exclusive Program Business are likely to deceive consumers for such insurance services into believing that the Exclusive Program Business coverage is being provided by Scottsdale, and not the ACE USA Companies. See MasterCard Int'l Inc. v. Sprint Commc'n Co., No. 94 CIV. 1051, 1994 WL 97097, at *4 (S.D.N.Y. March 23, 1994), aff'd, 23 F.3d 397 (2d Cir. 1994) (holding that plaintiff had a valid claim for false advertising and granting injunction, where defendant tried to use the Word Cup trademarks on calling cards, because defendant's use of the trademarks would convey the false impression to the world that defendant was officially sanctioned by the World Cup organization where plaintiff was the exclusive licensee). This deception is material because it is likely to cause consumers for insurance services to purchase the Exclusive Program Business coverage from Scottsdale instead of Plaintiffs. Mylan Pharms., Inc. v. Proctor & Gambel Co., 443 F. Supp. 2d 453, 462-63 (S.D.N.Y. 2006) (deception is material where advertisement implies that the over the counter drug is the same as a prescription drug).

26

As a result of Scottsdale's improper use of the trademarks and other indicia and designations of origin associated with the Exclusive Program Business, Plaintiffs will be damaged, not only by Scottsdale's diversion of sales, but also in terms of loss of the good will associated with the Exclusive Program Business and the reputation they have developed as the exclusive carrier for that business. Stiffel Co. v. Westwood Lighting Group, 658 F. Supp. 1103, 1111 (D.N.J. 1987) (when seeking equitable relief like an injunction under § 43(a) of the Lanham Act, only a showing of "likelihood of damage" is required).

C.    The ACE USA Companies Will
      Suffer Irreparable Harm If Injunctive
      Relief Is Not Granted

As discussed above, Plaintiffs will suffer irreparable harm if Wachovia Insurance Agency is not prevented from disclosing or transferring any of their confidential and proprietary information and documents and property to any third party, including without limitation as part of the proposed sale of assets with which Wachovia Insurance Agency plans to proceed. (Lupica Dec. ¶¶ 59, 64-64) Neo Gen Screening, Inc. v. TeleChem Int'l, Inc., 69 Fed. Appx. 550, 554-555 (3d Cir.2003) (disclosure of counter-claimant's trade secret in a "clean room" would cause irreparable injury); BP Chems. Ltds. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000) (irreparable harm shown where witness testified that if defendants used trade secrets illegally obtained from BP in building their plant they would damage BP's reputation, its credibility and ability to license its technology); see also FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F. 2d 61, 63 (2d Cir. 1984) (loss of trade secrets was an irreparable harm that could not be measured in money because "a trade secret once lost is, of course, lost forever").

Likewise, the ACE USA Companies will suffer irreparable harm unless Wachovia Insurance Agency is enjoined from permitting and assisting any third party, including Scottsdale, in using protected property rights, websites, and e-mail addresses that are to be used solely for

Exclusive Program Business. (Lupica Dec. ¶¶ 59-62) Otherwise, the whole purpose of having an exclusive agency arrangement is completely defeated.

Injunctive relief is also appropriate in this case because absent such relief, the ACE USA Companies will lose the goodwill that has accrued as a result of the Exclusive Program Business and the reputation they have developed in the marketplace as a result of their having long been known as the sole carrier for the Exclusive Program Business. (Lupica Dec ¶¶ 60-62) BP Chems, 229 F.3d 254, 263; Scholastic Funding Group, LLC v. Kimble, 2007 WL 1231795 at *9 (D.N.J. 2007) (risk to Plaintiff's reputation and good will would occur if former employee communicated with vendors and other business entities on behalf of new employer, when just months prior he was contacting these same entities on behalf of Plaintiff). The reputational injury that Plaintiffs would suffer would also affect their property and casualty business, with which the Exclusive Program Business has been associated. (Lupica Dec. ¶ 62)

D.    The Balance Of Hardships
      Favors The ACE USA Companies

The balance of hardships tips decisively in the ACE USA Companies' favor. With respect to Wachovia Insurance Agency, an injunction would not cause any harm to them because the injunction would simply halt Wachovia Insurance Agency from acting in violation of the Exclusive Agency Agreement, and require it to fulfill its existing obligations under that agreement. In contrast, the ACE USA Companies would be severely injured because they risk loosing the benefits of the infrastructure that has been put in place under the Exclusive Agency Agreement for which the Exclusive Program Business operates. (Lupica Dec. ¶¶ 64)

Plaintiffs have spent years developing the Exclusive Program Business including developing its confidential and proprietary information. (Roman Dec. ¶¶ 1, 8) In contrast, Scottsdale has spent no time or effort building the Exclusive Program Business and is looking to

capitalize from the ACE USA Companies' success.  (Roman Dec. ¶¶ 3, 4)  As a result,

Scottsdale stands to lose little or nothing as compared to the ACE USA Companies.

E.      The Issuance of the Requested
        Injunction Is In The Public Interest

        The public interest favors a preliminary injunction.  The public interest is served by

protecting confidential and proprietary information including protected trademark rights, which

provide companies with the incentive to innovate to provide insurance customers with the

highest caliber insurance products.  Opticians Ass'n of America v. Indep. Opticians of America,

920 F.2d 187, 197 (3rd Cir. 1990) (the public interest is served by protecting trademarks and

preventing public deception).  There is also a significant public interest in protecting contractual

rights and ensuring that parties abide by valid contractual agreements.  See Scholastic Funding,

2007 WL 1231795 at *12 ("Judicial enforcement of . . . contracts serves the public interest by

promoting stability and certainty in business and employment relationships"); Score Board, Inc.

v. Upper Deck Co., 959 F. Supp. 234, 240 (D.N.J. 1997) (holding that granting a preliminary

injunction in a private dispute is in the public interest because it prevents one company from

interfering with the legally protected contractual rights of another).

        Here, permitting Defendants to interfere with the ACE USA Companies exclusive rights

as created by the Exclusive Agency Agreement while litigating this case for which it has no

apparent meritorious defenses only undermines this important public interest.

## CONCLUSION

        For all the foregoing reasons, the ACE USA Companies respectfully request that the

Court grant its application for temporary restraints and a preliminary injunction.

29

Dated: September 2, 2008

Respectfully submitted:

GRAHAM CURTIN, P.A.

By /s/ Thomas Curtin
     Thomas R. Curtin
     George C. Jones

4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
Tel:   (973) 401-7117
Fax:  (973) 292-1767

O'MELVENY & MYERS LLP

By /s/ Paul R. Koepff
     Paul R. Koepff
     Claudia Ray

Times Square Tower
7 Times Square
New York, NY  10036
Tel:   (212) 326-2000
Fax:  (212) 326-2061

*Attorneys for Plaintiffs*
*ACE American Insurance Company,*
*Illinois Union Insurance Company,*
*Westchester Surplus Lines Insurance*
*Company, and Westchester Fire Insurance*
*Company*