Thomas R. Curtain
George C. Jones
GRAHAM CURTIN, P.A.
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
Telephone:     (973) 401-7117
Facsimile:     (973) 292-1767

Paul R. Koepff
Claudia Ray
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036
Telephone:     (212) 326-2000
Facsimile:     (212) 326-2061

*Attorneys for Plaintiffs*
*ACE American Insurance Company,*
*Illinois Union Insurance Company,*
*Westchester Surplus Lines Insurance Company,*
*and Westchester Fire Insurance Company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, and WESTCHESTER FIRE INSURANCE COMPANY,<br><br>                    Plaintiffs,<br><br>          -against-<br><br>WACHOVIA INSURANCE AGENCY INC. D/B/A E-RISK SERVICES, and SCOTTSDALE INSURANCE COMPANY,<br><br>                    Defendants. | Civil Action No.<br><br>**DECLARATION OF DAVID LUPICA IN SUPPORT OF THE APPLICATION OF PLAINTIFFS FOR A TEMPORARY RESTRAINING ORDER AND THEIR MOTION <u>FOR A PRELIMINARY INJUNCTION</u>** |

I, DAVID LUPICA, declare and state as follows:

1. I am President of ACE Westchester Professional Risk, one of the operating divisions of the ACE Group of Companies. I have personal knowledge of the matters set forth herein or else have knowledge from documents and other sources of information.

2. This declaration is submitted in support of the application of the Plaintiffs seeking a temporary restraining order in the first instance and thereafter a preliminary injunction.

3. Plaintiffs are ACE American Insurance Company, Illinois Union Insurance Company, Westchester Surplus Lines Insurance Company, and Westchester Fire Insurance Company (collectively, the "Plaintiffs" or the "ACE USA Companies").

4. Defendants are Wachovia Insurance Agency Inc. d/b/a/ E-Risk Services ("Wachovia Insurance Agency") and Scottsdale Insurance Company ("Scottsdale") (collectively, the "Defendants").

5. For more than six years, the ACE USA Companies have been the exclusive insurer, and Wachovia Insurance Agency has acted as the exclusive agent, for the "Exclusive Program Business". During that time, the Exclusive Program Business has grown from approximately $47 million in annual premium to approximately $90 million in annual premium. The ACE USA Companies have developed a significant reputation in the marketplace for the insurance coverage which they provide through this Exclusive Program.

6. Now, however, working with Scottsdale and certain members of its senior management, Wachovia Insurance Agency is now trying to undermine the Exclusive Agency Agreement in at least the following ways to the prejudice of the ACE USA Companies and the policyholders insured by the ACE USA Companies:

    a. Certain members of senior management of Wachovia Insurance Agency are forming an entirely new corporation to act as the exclusive agent for a different insurer than the ACE USA Companies, Scottsdale, which will then do the Exclusive Program Business.

2

  b. Wachovia Insurance Agency will sell all of its assets with respect to the Exclusive Program Business (which is for the sole benefit of the ACE USA Companies under the Exclusive Agency Agreement) to this new entity to be formed by its own senior management. Without any such assets, however, the Wachovia Insurance Agency can no longer maintain existing Exclusive Program Business or generate new Exclusive Program Business.

  c. Upon the sale of assets, senior management and other employees of Wachovia Insurance Agency will resign and become employed by the new entity. Without senior management and employees, Wachovia Insurance Agency cannot and admittedly will not maintain existing Exclusive Program Business or generate new Exclusive Program Business.

  d. Wachovia Insurance Agency will not be selling or assigning the Exclusive Agency Agreement to the new entity. As a consequence, the new entity will not be subject to any of the obligations, restrictions or limitations of the Exclusive Agency Agreement.

  e. In connection with the above transactions, as I explain herein, Wachovia Insurance Agency has committed numerous breaches of the Exclusive Agency Agreement.

  f. Also, in connection with certain of these transactions, Scottsdale has obtained and used in certain respects trade secrets, and confidential and proprietary documents and information with respect to the Exclusive Program Business and of the ACE USA Companies.

<u>Nature Of The Action And Relief Sought</u>

  7. In their Complaint filed in this action, the ACE USA Companies assert claims against the Defendants arising out of Wachovia Insurance Agency's willful, material breaches of the Amended and Restated Agency Agreement (the "Exclusive Agency Agreement") between the ACE USA Companies and Wachovia Insurance Agency. This Agreement is with respect to Professional Liability Exclusive Program Business (the "Exclusive Program Business").

  8. As part of the Complaint, it is alleged that among other things, Wachovia Insurance Agency has breached the Exclusive Agency Agreement by providing the ACE USA Companies' confidential and proprietary documents and information to another insurer, Scottsdale and authorizing Scottsdale to use the trademarks and other indicia associated with the Exclusive Program Business.

3

9. This action also concerns Scottsdale's improper and inappropriate use of property owned by Plaintiffs and trade secrets and proprietary and confidential documents and information relating to the Exclusive Program Business. Among other things, Scottsdale has filed insurance forms in numerous states that are the property of the ACE USA Companies, including the Business and Management (BAM™) package policy offered through Wachovia Insurance Agency (the "BAM™ Program"). I refer to the Declaration of Maria Roman for more specifics about Scottsdale's filings.

10. In this action, Plaintiffs seek a temporary restraining order and injunctive relief against Wachovia Insurance Agency to maintain the status quo pending the outcome of an arbitration that Plaintiffs have just commenced against Wachovia Insurance Agency.

11. In this action, Plaintiffs also seek a temporary restraining order and injunctive relief against Scottsdale. Essentially, Plaintiffs ask that this Court order Scottsdale to (i) cease using property owned by Plaintiffs and trade secrets and confidential and proprietary information relating to the Exclusive Program Business, (ii) return any such trade secrets and confidential and proprietary property and information in its possession, (iii) cease making any filings based on or incorporating any such trade secrets and property or information, and (iv) withdraw any such filings that it has previously made.

12. Plaintiffs also seek damages from Scottsdale based on, among other things, Scottsdale's unauthorized use of property owned by the ACE USA Companies, Scottsdale's improper and unauthorized use of trade secrets and proprietary and confidential documents and information relating to the Exclusive Program Business, and from Scottsdale's tortious interference with the Exclusive Agency Agreement.

13. Later in this declaration, I set forth the facts demonstrating the irreparable injury to Plaintiffs unless the temporary restraining order is issued and the preliminary injunction is later issued.

Wachovia Insurance Agency, The
Exclusive Program Business And
The Exclusive Agency Agreement

14. On or about January 1, 2002, the ACE USA Companies entered into an exclusive agency agreement with E-Risk Services, whereby the ACE USA Companies became the exclusive insurer writing coverage for the Exclusive Program Business. E-Risk Services became the exclusive agent for the Exclusive Program Business of the ACE USA Companies. At this point in time, E-Risk Services was an independent agency.

15. In or about October 2002, Wachovia Corp. purchased E-Risk Services, which then became a direct subsidiary of Wachovia Corp. and was known as "Wachovia Insurance Agency, Inc., d/b/a E-Risk Services". Wachovia Insurance Agency succeeded to the rights and obligations of E-Risk Services under the agency agreement.

16. Over the next several years, the Exclusive Program Business increased substantially. Both the ACE USA Companies and Wachovia Insurance Agency were more than satisfied with the agency agreement. Both abided by the terms of this agreement.

17. Effective as of January 1, 2006, Wachovia Insurance Agency and the ACE USA Companies entered into the Amended and Restated Exclusive Agency Agreement. A true and correct copy of the Amended and Restated Exclusive Agency Agreement is attached hereto as Exhibit 1.

18. Over the next several years, the Exclusive Program Business continued to increase. Both Wachovia Insurance Agency and the ACE Companies were satisfied with the

Exclusive Agency Agreement. Both abided by the terms of the agreement, until a few months ago when Wachovia Insurance Agency began to breach the agreement in many different ways.

19. There are a number of provisions in the Exclusive Agency Agreement, which are relevant to the instant application and motion of the Plaintiffs. I review and quote them below.

20. In Section I, Wachovia Insurance Agency was appointed as the General Agent with respect to the Exclusive Program Business and granted authority to accomplish, effect and execute duties "upon the terms and conditions set forth" in the Exclusive Agency Agreement.

21. In this action, the ACE USA Companies contend that, as the General Agent for the Exclusive Program Business, Wachovia Insurance Agency had a fiduciary obligation to act on behalf, and in the best interests, of the ACE USA Companies.

22. The term of the Exclusive Agency Agreement was from October 1, 2002 until December 31, 2010.

23. In Section IV.B. of the Exclusive Agency Agreement provides:

> [Wachovia Insurance Agency] shall use commercially reasonable efforts to perform all acts necessary for the proper conduct of the Program Business on behalf of Company and shall maintain a staff of competent and trained personnel, supplies and equipment for the purpose of performing Agent's duties under this Agreement.

24. It was always agreed and understood that Wachovia Insurance Agency would use commercially reasonable efforts to maintain existing Exclusive Program Business and produce new Exclusive Program Business. Section IV.B. reflects that agreement.

25. Section IV.I.1. ("Ownership of Policy Forms, Printed Matter and Program Data") provides:

> 1. Agent will only use policies, endorsements and all other forms approved by Company and the Agent in connection with its duties hereunder. <u>It is expressly understood that any data processing software or data processing technology or applications, policies, endorsements or forms, or data processing software which produces such applications, policies, endorsement, or forms, or any</u>

<u>other supplies furnished to Agent by Company shall remain the property of Company.</u>  It is expressly understood that any data processing software or data processing technology or applications, policies, endorsements or forms, including but not limited to the Business and Management (BAM) policy form or application, or data processing software or data processing technology which produces such applications, policies, endorsements, or forms, or any other supplies furnished by Agent to the Company shall remain the property of the Agent; <u>provided, however, any applications, policies, endorsements or forms the Company files with any state shall be the property of the Company</u>.  Any unused policy numbers shall be the property of Company and shall be surrendered to Company upon its demand.

(Emphasis added)

    26.    Section IV.I.3. provides:

3.    During the term of this Agreement and upon termination of the Agreement, <u>Agent and Company shall treat all Program information listed in Sections IV.I.1. and IV.I.2. that is not publicly available as confidential information and neither party shall disclose, communicate or share such items or information with any third party unless authorized in writing to do so by a court or other governmental authority having jurisdiction</u>.  The restrictions contained herein shall not prevent either party from disclosing such information, as mandated by regulatory organizations or courts of law.

(Emphasis added)

    27.    Section IV.I.4. provides:

4.    Upon termination of this Agreement, Agent shall promptly return to Company all items and information listed in Sections IV.I.1 and IV.I.2 that are the exclusive property of Company.  Company shall promptly return to Agent all information listed in Sections IV.I.1 and IV.I.2 that is the property of Agent.  The Company shall have the right to retain statistical data for reporting purposes.

    28.    This provision underscores that Wachovia Insurance Agency must honor the confidentiality provision.

    29.    It is the position of the ACE USA Companies that no other insurance company has any right to use or file applications, policies, endorsements, forms or rating plans which were

filed by or on behalf of the ACE USA Companies with respect to the Exclusive Program Business.

30.     It is also their position that because Wachovia Insurance Agency must treat all program information that is not publicly available as "confidential information", it is precluded from disclosing, communicating or sharing such information with <u>any</u> third party, unless it first obtains written authorization from the ACE USA Companies.

31.     Section IX.A provides that all records of insurance are the "property" of the ACE USA Companies:

> A.      Except as otherwise provided in this Section, policyholder lists, including expirations, and their use and control for solicitation of business written or bound by or through Agent shall be the sole and exclusive property of Agent.  <u>Records of insurance including coverage bound, insurance policies and other related information are the property of the Company pursuant to Section IV.I of this Agreement</u>.

(Emphasis added)

32.     Pursuant to the above provision, the ACE USA Companies have filed with various state insurance departments forms of insurance policies, rating plans and other materials. It is the position of the ACE USA Companies that such materials are their property and not that of the Wachovia Insurance Agency.

33.     Section XXII bars Wachovia Insurance Agency from entering into an agency agreement with any other carrier during the term of the Exclusive Agency Agreement:

> Agent shall not enter into an agency agreement for Program Business with an entity, other than the Company, during the term of this Agreement. . . .

The Confidential And Proprietary Documents
And Information And Also The Property Of
<u>Plaintiffs With Respect To Exclusive Program Business</u>

34. With respect to Exclusive Program Business, a substantial amount of trade secrets and confidential and proprietary documents and information have been generated and continue to be generated, including confidential information related to premiums, rates, losses, loss ratios, reserves, actuarial information, and so on. All of this information is confidential and proprietary and constitutes trade secrets of the ACE USA Companies, and may not be disclosed pursuant to the confidentiality provisions of the Exclusive Agency Agreement.

35. One line of the Exclusive Program Business marketed to prospective insureds is the Business and Management package policy, marketed under the trademark BAM™ (the "BAM™ Program"). This reference to the type of package policy is unique to the Exclusive Program Business under the Exclusive Agency Agreement. It is the position of the ACE USA Companies that Wachovia Insurance Agency may not authorize or permit some other insurer to make reference to this terminology, including using the reference in any filings with state insurance departments.

36. The ACE USA Companies provided to Wachovia Insurance Agency certain documents and information that were confidential and/or proprietary to the ACE USA Companies for use in connection with the Exclusive Program Business, including for the BAM™ Program. These included the ACE USA Companies' application documents, policies, and other forms containing rate information which bore the trademarks, such as BAM™, and other indicia of the ACE USA Companies. It is the position of the ACE USA Companies that Wachovia Insurance Agency may not disclose or share this information with some other insurer, or permit some other insurer to utilize these documents or information in deciding to become an insurer of the program or in making filings with state insurance departments.

37. The ACE USA Companies also provided Wachovia Insurance Agency with underwriting, loss and actuarial documents and information, as well as other confidential and proprietary documents and information, for use by Wachovia Insurance Agency solely in connection with its operation of the Exclusive Program Business, including without limitation in quarterly pricing reports, monthly effective rate change reports, large loss reports, and monthly specific claim information and reports. It is the position of the ACE USA Companies that Wachovia Insurance Agency cannot provide or share any such underwriting, loss or actuarial documents and information to some other insurer like Scottsdale.

Wachovia Corp.'s Efforts To
<u>Sell Wachovia Insurance Agency</u>

38. In Spring 2008, Wachovia Corp. considered selling its subsidiary, Wachovia Insurance Agency.

39. In May 2008, the ACE USA Companies offered to purchase the Exclusive Program Business from Wachovia Insurance Agency, but that offer was rejected.

40. By no later than July 2008, Wachovia Corp. considered a bid to acquire Wachovia Insurance Agency submitted by members of Wachovia Insurance Agency's senior management. The ACE USA Companies learned about this effort by the senior management of Wachovia Insurance Agency, when so advised by representatives of Wachovia Corp.

41. The ACE USA Companies were led to believe that this new entity to be formed by senior management of Wachovia Insurance Agency would essentially acquire Wachovia Insurance Agency or otherwise succeed to the rights and obligations of Wachovia Insurance Agency under the Exclusive Agency Agreement. They were never told that Wachovia Insurance Agency intended to sell only the assets of the business but did not sell or assign the Exclusive Agency Agreement.

42. By proceeding in this fashion, it effectively allowed the executive management of Wachovia Insurance Agency to form a new company that would no longer honor the Exclusive Agency Agreement, but instead would become the exclusive agent to a different insurer, Scottsdale.

43. Also, by proceeding in this fashion, Wachovia Insurance Agency has sold everything to the new entity and possesses no assets, no senior management or other employees to maintain existing Exclusive Program Business and to generate new Exclusive Program Business in contravention of the Exclusive Agency Agreement.

Scottsdale's Use Of Confidential
And Proprietary Documents
And Information Of Plaintiffs

44. Prior to September 2008, Scottsdale had never sold any insurance policies or insurance coverage such as that provided by the ACE USA Companies under the Exclusive Program Business pursuant to the Exclusive Agency Agreement.

45. In May 2008, Scottsdale began to make certain filings with respect to the same type of insurance provided by the ACE USA Companies under the Exclusive Agency Agreement with various state insurance departments. I refer to the Declaration of Maria Roman for more specifics about the Scottsdale filings.

46. These Scottsdale filings are identical or substantially the same as the materials used by and on behalf of the ACE USA Companies with respect to the Exclusive Program Business, including specifically the BAM™ Program offered by Wachovia Insurance Agency. The filings made by Scottsdale include the rates, rating plan, policy form and applications for the Exclusive Program Business, all containing the BAM™ Program name. I again refer to the Declaration of Maria Roman for more specifics.

47. In this action, the ACE USA Companies contend that portions of Scottsdale's filings were not based on publicly available information obtained from state insurance departments, but instead were based on the ACE USA Companies' modified form of application currently being used for the Exclusive Program Business, which modified application form contained new and revised questions and was different from the forms filed with the insurance departments.

48. In its filings, Scottsdale uses the term "E-Risk Services™", has a website entitled "www.ERisk Services.com", has an email address for applications entitled application@ERiskServices.com, and uses the term "Business Management (BAM™) Indemnity Insurance." I again refer to the Declaration of Maria Roman for more specifics.

49. In light of Scottsdale's filings, the ACE USA Companies became concerned that Wachovia Insurance Agency had violated the terms of the Exclusive Agency Agreement by (a) conducting or discussing the conduct of Exclusive Program Business with another insurer; and (b) by providing trade secrets and confidential and proprietary documents and information to Scottsdale without the ACE USA Companies' authorization. The ACE USA Companies also became concerned by Scottsdale's use of the trademarks and other indicia associated with the Exclusive Program Business which suggested that it was falsely and misleadingly representing that it, and not the ACE USA Companies, was the exclusive insurer for the Exclusive Program Business.

50. In an effort to address these concerns, in an August 8, 2008 letter to Wachovia Corp. and Wachovia Insurance Agency, the ACE USA Companies asked them to provide certain assurances that (a) neither Wachovia Corp. nor Wachovia Insurance Agency had engaged in any discussions with any other insurance carrier regarding any aspect of the Exclusive Program Business, such as the BAM™ Program, including without limitation with Scottsdale; (b) neither

12

Wachovia Corp. nor Wachovia Insurance Agency had provided to any other insurer, including in particular Scottsdale, any confidential and/or proprietary documents, materials or information concerning the Exclusive Program Business, including without limitation any documents, materials or other information required to be kept confidential under the Agreement or the Agreement itself; (c) neither Wachovia Corp. nor Wachovia Insurance Agency has had with any other insurer, including Scottsdale, any discussions about such confidential documents, materials or information or the Agreement itself; (d) Wachovia Corp. and Wachovia Insurance Agency had not engaged, and have not taken any steps to engage, in any Exclusive Program Business with any other insurer, including Scottsdale.  A true and correct copy of this letter is attached as Exhibit 2.

51. Also, in an August 8, 2008 letter to Scottsdale, the ACE USA Companies asked that it provide similar assurances to those requested of Wachovia Corp. and Wachovia Insurance Agency.  A true and correct copy of this letter is attached as Exhibit 3.

52. In separate August 12, 2008 letters, while Wachovia Corp. and Wachovia Insurance Agency and Scottsdale purported to provide certain assurances, neither made any effort to address, much less explain, the Scottsdale filings.  True and correct copies of the August 12 letters are attached as Exhibits 4 and 5.  Both Wachovia Insurance Agency and Scottsdale completely glossed over whether and to what extent confidential and proprietary documents and information had been provided to and used by Scottsdale.

53. Because the ACE USA Companies remained concerned about the Scottsdale filings and the apparent breach by Wachovia Insurance Agency of its obligations under the Agreement, by separate letters dated August 14, 2008 to Wachovia Corp. and Wachovia Insurance Agency and to Scottsdale, the ACE USA Companies again asking them to explain how Scottsdale came to be in possession of the ACE USA Companies confidential and/or

proprietary materials, to make filings incorporating those materials, to file a form of insurance policy owned by the ACE USA Companies, and to use the BAM™ and E-RISK™ trademarks as well as other indicia long-associated with the Exclusive Program Business.  True and correct copies of these letters are attached as Exhibits 6 and 7.

54. As of the date of this Declaration, Wachovia Insurance Agency has not responded to the August 14 letter, notwithstanding several requests that it do so.

55. In an August 25, 2008 letter, Scottsdale continued to deny any wrongdoing, but still did not explain how it came into possession of confidential and proprietary documents and information.  A true and correct copy of the August 25 letter is attached hereto as Exhibit 8.  Most of the Scottsdale letter is devoted to raising questions and not providing any of the answers previously requested by the ACE USA Companies.  By letter dated September 2, 2008, the ACE USA Companies responded to Scottsdale's August 25, letter.  A true and correct copy of the September 2, letter is attached as Exhibit 9.

Wachovia Insurance Agency's Breaches Of
The Agreement Are Causing And Will Cause
<u>Irreparable Harm To The ACE USA Companies</u>

56. In this action, it is the position of the ACE USA Companies that, starting within the last few months, Wachovia Insurance Agency has committed a series of continuing breaches of its obligations under the Exclusive Agency Agreement, including without limitation,

    a. At some point in the last few months, Wachovia Insurance Agency provided or shared trade secrets and confidential and proprietary documents and information with respect to the Exclusive Program Business to Scottsdale in order to interest Scottsdale in and get Scottsdale to become an insurer of the same insurance provided by the ACE USA Companies under the Exclusive Program Business.  After reviewing such information, Scottsdale agreed to do so.

    b. Wachovia Insurance Agency provided and shared other confidential and proprietary documents and information with respect to Exclusive Program Business, which Scottsdale then used in whole or in part to make certain filings with various state insurance departments.

      c.      Wachovia Insurance Agency allowed Scottsdale to use protected property rights which were for exclusive use pursuant to the Exclusive Agency Agreement, which Scottsdale then used in making certain filings with various state insurance departments.

      d.      Wachovia Insurance Agency allowed and assisted Scottsdale in holding itself out as an authorized insurer for the Exclusive Program Business, which Scottsdale then used in its filings.

      e.      Wachovia Insurance Agency provided confidential and proprietary information of the ACE USA Companies to Scottsdale.

57.      In this action, the ACE USA Companies allege that Wachovia Insurance Agency is preventing and restricting the ACE USA Companies from obtaining data and information that the ACE USA Companies absolutely need to properly discharge their obligations under various statutes and regulations of the various states. The Wachovia Insurance Agency must be ordered to cooperate fully and in all respects in order that the ACE USA Companies can discharge their statutory, regulatory and contractual obligations.

58.      An example of the Wachovia Insurance Agency restricting or preventing the ACE USA Companies from having access to important data and information is precluding the ACE USA Companies from accessing and utilizing a computer system, known as "Citrix", which contains important information about insureds, insurance policies and underwriting information. For over two weeks, Wachovia Insurance Agency has not allowed the ACE USA Companies to access this system, purportedly because the system is not functioning. Access to the information contained in the Citrix system is essential for the ACE USA Companies to properly handle claims and comply with applicable state insurance department regulatory requirements.

59.      If Wachovia Insurance Agency and Scottsdale are not prevented from continuing to pursue these activities in breach of the Exclusive Agency Agreement, including using the ACE USA Companies' confidential and proprietary materials to compete with the ACE USA

Companies in breach of the Agreement's exclusivity provision, the ACE USA Companies will suffer significant and irreparable harm.

60. First, the ACE USA Companies have lost and will continue to lose the goodwill that has accrued as a result of the Exclusive Program Business and the reputation they have developed in the marketplace as a result of their having long been known as the sole insurer for the Exclusive Program Business (which has approximately doubled in size since the ACE USA Companies became the exclusive insurer in 2002).

61. The ACE USA Companies have been identified for the last six years and are currently identified as the sole insurers with respect to the Exclusive Program Business under the Exclusive Agency Agreement with Wachovia Insurance Agency. However, that competitive advantage is being lost and will continue to be lost unless Wachovia Insurance Agency and Scottsdale are enjoined from identifying Scottsdale as the insurer for such Exclusive Program Business.

62. Second, the Exclusive Program Business has been and is associated with the ACE USA Companies' property and casualty business, and such business has been and will continue to be damaged as a result of the conduct of Wachovia Insurance Agency and/or Scottsdale.

63. Third, Wachovia Insurance Agency and Scottsdale have available to them trade secrets and confidential and proprietary information relating to the Exclusive Program Business, including not only individual customer files but also the loss and actuarial data, which would provide them with a significant and improper advantage in seeking renewals or new Exclusive Program Business.

64. Finally, even if the ACE USA Companies were to continue in the Exclusive Program Business, they would have to recreate all of the systems that E-Risk and Scottsdale

would already have available to them, putting the ACE USA Companies at a significant competitive disadvantage.

The Apparent Abandonment Or Discontinuation
Of Exclusive Program Business And/Or Other
<u>Business By Wachovia Insurance Agency</u>

65. By letter dated August 14, 2008, Wachovia Insurance Agency advised the ACE USA Companies that Wachovia had entered into a Letter of Intent to sell the assets of Wachovia Insurance Agency, not including the ACE USA Companies' proprietary materials, to a management-led group. A true and correct copy of this letter is attached hereto as Exhibit 10.

66. In its August 14 letter, Wachovia also advised that the Exclusive Agency Agreement was not being assigned by Wachovia Insurance Agency to the new entity to be formed by the executive management of Wachovia Insurance Agency, and that the current executive management would no longer be employed by Wachovia Insurance Agency following the proposed transaction.

67. It was apparent to the ACE USA Companies that following the transaction referred to in Wachovia's August 14 letter, Wachovia Insurance Agency would no longer have the intent or ability to do the Exclusive Program Business under the Exclusive Agency Agreement. Without any assets or experienced and knowledgeable persons, it is my assumption that Wachovia Insurance Agency simply would not be in a position to service existing business and would no longer be able to maintain existing business or to write any new business. In effect, Wachovia Insurance Agency was abandoning and discontinuing the Exclusive Program Business.

68. By letter dated August 15, 2008, the ACE USA Companies asked Wachovia Insurance Agency to confirm that it would not assign the Exclusive Agency Agreement to the new entity that was buying Wachovia Insurance Agency's assets. The ACE USA Companies

also asked Wachovia Insurance Agency to confirm that it was abandoning the Exclusive Program Business under Section VIII.C.4 of the Exclusive Agency Agreement, which provided for immediate termination of the Exclusive Agency Agreement by the ACE USA Companies in the event the Exclusive Program Business was discontinued.  A true and correct copy of this August 15 letter is attached is attached as Exhibit 11.

69. Wachovia Insurance Agency has yet to respond to this letter, notwithstanding requests that it do so.

The Arbitration Demanded By
The ACE USA Companies

70. The Exclusive Agency Agreement requires that the parties arbitrate differences in opinions or interpretations of that agreement.  Section XX provides that "any dispute arising from or relating to the performance or breach of [the] Agreement" will be submitted to arbitration before a panel of three arbitrators under the rules of the American Arbitration Association.

71. By Demand and Statement of Claim dated September 2, 2008, therefore, the ACE USA Companies commenced an arbitration against the Wachovia Insurance Agency.  A true and accurate copy of this September 2 Demand and Statement of Claim is attached hereto as Exhibit 12.

72. Except for seeking a temporary restraining order and preliminary order in this action, the ACE USA Companies do not intend to pursue any other claims against Wachovia Insurance Agency in this lawsuit.

I declare that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Executed on September 2, 2008, at Roswell, GA.

By: _____
David Lupica