NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, and WESTCHESTER FIRE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> WACHOVIA INSURANCE AGENCY INC. D/B/A/ E-RISK SERVICES and SCOTTSDALE INSURANCE COMPANY, <br><br> Defendants. | Civil Action No.: 08-4369 (JLL) <br><br> **O P I N I O N** |

**LINARES, District Judge.**

This matter comes before the Court on the order to show cause of Plaintiffs ACE American Insurance Company, Illinois Union Insurance Company, Westchester Surplus Lines Insurance Company, and Westchester Fire Insurance Company (collectively "Plaintiffs" or "ACE American") requesting temporary restraints and a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 against Defendants Wachovia Insurance Agency Inc. ("WIA") and Scottsdale Insurance Company ("Scottsdale") (collectively "Defendants"). For the reasons set forth in this Opinion, Plaintiffs' request for temporary restraints is denied in part and granted in part.

## BACKGROUND

On January 1, 2002, ACE American entered into an exclusive insurance agency agreement with E-Risk Services to sell certain business insurance. (Compl. ¶ 15.) E-Risk Services was later acquired by Wachovia Corp. in October of 2002, becoming a direct subsidiary of Wachovia Corp. named Wachovia Insurance Agency, Inc., but continuing to do business as E-Risk Services. (Id. ¶ 16.) ACE American and WIA eventually executed a new agreement, titled the "Amended and Restated Agency Agreement for E-Risk Program Between [ACE American] and [WIA]," that became effective on January 1, 2006. (Id. Ex. 1.)

Pursuant to the January 2006 agreement (hereinafter the "Agency Agreement"), WIA and ACE American entered into an arrangement whereby ACE American became the exclusive writer of policies on certain business insurance sold by WIA.[1] (Id. ¶¶ 18-26.) This contract, by its own terms, was to continue in force until December 31, 2010. (Pl. Br. at 5.) The WIA/ACE America relationship continued without apparent incident until 2008, when Wachovia Corp. became interested in selling WIA. (Compl. ¶ 38.) Wachovia Corp. declined an offer by ACE American to acquire WIA, and then considered and provisionally accepted an offer by WIA's management to purchase WIA. (Id. ¶ 41; id. Ex. 10 at 1.) The transaction between WIA's management and Wachovia Corp. did not include an assignment of the Agency Agreement to the new entity. (Id. Ex. 10 at 1.) Wachovia Corp. declined ACE American's offer in July of 2008, and began considering the WIA management transaction at approximately the same time. (Id. ¶¶ 40-41.)

---

[1] The types of policies covered by the Agency Agreement were: directors & officers, employment practices, errors & omissions, fiduciary, crime, insured persons, and technology, media, and professional services. (Compl. Ex. 1 at A-3.)

In August of 2008, ACE American became aware of certain filings with state insurance agencies by Scottsdale, some as early as May 2008, utilizing substantially the same forms as ACE American and using trademarks associated with the E-Risk Program. (Id. ¶¶ 43-45, 48-49.) Plaintiffs allege that the Scottsdale E-Risk forms were based upon recent ACE American forms and confidential information not in the public domain at the time of their use by Scottsdale. (Id. ¶ 51.) ACE American alleges that WIA violated the Agency Agreement by providing confidential information and ACE American property to Scottsdale in furtherance of an ongoing and future business arrangement between WIA management's new E-Risk entity and Scottsdale. (Id. ¶¶ 56-57.)

ACE American filed this action by way of Order to Show Cause in this Court on September 2, 2008, requesting injunctive relief only against WIA pending arbitration, and requesting damages and injunctive relief against Scottsdale. Specifically, ACE America alleges that WIA breached the Agency Agreement, violated its fiduciary duty to Plaintiffs, and disclosed trade secrets to Scottsdale. (Compl. ¶¶ 77-85.) With respect to Scottsdale, Plaintiffs request injunctive and legal relief based upon theories of tortious interference with contract, misappropriation of trade secrets, and false advertising. (Compl. ¶¶ 88-120.)

## DISCUSSION

A.   **Legal Standard for a Temporary Restraining Order**

Federal Rule of Civil Procedure 65 permits District Courts to grant temporary restraining orders. Fed. R. Civ. P. 65(b). Injunctive relief is an "'extraordinary remedy' and 'should be granted only in limited circumstances.'" Kos Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d

1421, 1427 (3d Cir. 1994)).  A court may grant an injunction only if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  Kos Pharms., 369 F.3d at 708.  A party must produce sufficient evidence of all four factors—and a district court should weigh all four—prior to granting injunctive relief.  Winback, 42 F.3d at 1427.  However, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."  Id. at 1427, n.8.

The Third Circuit has held that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied."  Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989).  The court further noted that "the 'preservation of the status quo' represents the goal of preliminary injunctive relief in any litigation, including in an arbitrable dispute."  Id. at 813.

**B.      Plaintiff's Motion for a Temporary Restraining Order**

Plaintiffs' instant request for emergent relief asks this Court to:

1) Temporarily restrain WIA and all persons acting in active concert with them from:

> misusing in any way, directly or indirectly, or selling, assigning or disclosing in any way trade secrets with respect to Exclusive Program Business, any confidential and proprietary documents and information with respect to Exclusive Program Business, and any confidential and proprietary documents and information of [ACE America] to any third party, including Scottsdale, or otherwise assisting or supporting any insurer, including Scottsdale, to engage or prepare to engage in Exclusive Program Business, pending the outcome of the arbitration proceeding;[2] and to

---

[2]Order to Show Cause at 5.

    2) Temporarily restrain Scottsdale and all persons acting in active concert with them from:

> obtaining or using, directly or indirectly, trade secrets with respect to Exclusive Program Business, any confidential and proprietary documents and information with respect to Exclusive Program Business, and any confidential and proprietary documents and information of [ACE America] and are hereby directed to immediately withdraw any and all filings they have made with any state insurance department that used or were based upon, directly or indirectly, any trade secrets with respect to Exclusive Program Business, any confidential and proprietary documents and information with respect to Exclusive Program Business, and any confidential and proprietary documents and information of [ACE American].[3]

ACE American bases its request for a temporary restraining order against WIA on its breach of contract and breach of fiduciary duty claims, and against Scottsdale on its tortious interference with contract, misappropriation of trade secrets, and false advertising claims. (Pl. Br. at 18-27.) Plaintiffs further request that a preliminary injunction be ordered pending the arbitration (with regard to WIA) and the final judgment (with respect to Scottsdale). (Order to Show Cause at 3-4.)

    1.    **Likelihood of Success on the Merits with Respect to WIA**

The party seeking injunctive relief must demonstrate a "reasonable probability of eventual success in the litigation." Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982). In evaluating whether a moving party has satisfied this first part of the standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) (citations omitted).

---

[3] Id.

The Agency Agreement specifies that its choice of law is that of the Commonwealth of Pennsylvania, without regard to its choice of law principles. (Compl. Ex. 1 § XXIII.) A federal court sitting in diversity—the only subject matter jurisdiction alleged by Plaintiffs—applies the choice of law principles of the state in which it sits. Laidlaw, Inc. v. Student Transp. of America, Inc., 20 F. Supp 2d 727, 750 (D.N.J. 1998). "Under New Jersey law, '[w]here a contract expresses a clear intent to have a particular jurisdiction's law govern, the parties' choice of law will apply unless it violates the public policy of New Jersey.'" Laidlaw, Inc., 20 F. Supp 2d at 750. As this Court finds no apparent violation of the public policy of New Jersey by applying the choice of law clause present in the Agency Agreement at this time, it will apply the law of Pennsylvania to the Agency Agreement. A breach of contract action in Pennsylvania requires "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).

Plaintiffs have demonstrated a likelihood of success on the merits with regard to their breach of contract claim sufficient to support injunctive relief against WIA. They have established, for the purposes of this request for emergent relief, that there is a very reasonable probability that the Agency Agreement constituted a contract between ACE American. The Agency Agreement was executed, business was conducted under its aegis, and the correspondence of the parties leading up to this action indicate that it was considered to be a contract. (Compl. Ex. 1 at 23; id. Ex. 10 at 1; Lupica Dec. ¶ 5.) There are no facts present to indicate that the Agency Agreement was not, as it appears on its face, the product of an offer, an acceptance, and a meeting of the minds. See Yarnell v. Almy, 703 A.2d 535, 538 (Pa. Super. Ct. 1998) (stating requirements for contract formation in Pennsylvania).

The Declaration of Maria Roman, Vice President of Plaintiff Westchester Fire Insurance Company, indicates that there is a reasonable probability that a breach occurred. The Agency Agreement forbids WIA from releasing nonpublic ACE American information, forms, and documents to third parties. (Compl. Ex. 1 §§ IV.I.1-4, Ex. A § XIII.) ACE American discovered filings from June of 2008 that indicate Scottsdale had access to as-yet-undisclosed forms used by ACE American with the Program Business and submitted these forms to state insurance agencies. (Roman Dec. ¶¶ 3-10.) Under the facts as presented, it appears probable that ACE American could establish a breach of the Agency Agreement by WIA.

   2.   **Likelihood of Success with respect to Scottsdale**

Under New Jersey law,[4] there are five basic elements for misappropriation of a trade secret: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff." Rohm and Haas Co. v. Adco Chemical Co., 689 F.2d 424, 429-30 (3d Cir. 1982). Confidential information, not rising to the level of a trade secret, may also receive protection under trade secret law under certain circumstances. Lamorte Burns & Co. v. Walters. 770 A.2d 1158, 1166 (N.J. 2001).

This Court finds that ACE American at this juncture has not demonstrated a likelihood of success at trial with respect to whether or not Scottsdale acquired information from WIA with

---

[4]The record is insufficiently developed to determine the proper choice of law for the claims of Plaintiff in this diversity action, except for the breach of contract claim. As Plaintiffs allege that WIA had an office in New Jersey, and Plaintiffs argue using New Jersey law, on the scant at present the Court will utilize New Jersey law.

knowledge that of a breach of confidence on the current record.  Scottsdale does indeed appear to have submitted forms to state insurance agencies that are very similar to those utilized by ACE American.  <u>Compare</u> Roman Dec. Ex. 1 at Business and Management Indemnity Policy Employment Practices Coverage Section <u>with</u> Roman Dec. Ex. 2 at Business and Management Indemnity Policy Employment Practices Coverage Section.  The record does not indicate, however, that Scottsdale knew that it was in receipt of a betrayed confidence: it filed certain documents that were unreleased into the market to the time by ACE American, and it also expressly referenced an ACE American company in its filings: "[a]s Scottsdale Indemnity Company does not currently write this coverage, we are filing the rates, rules and forms as filed by Westchester Fire Insurance Company."  (Roman Dec. ¶ 8, Ex. 1 at 1.)

For similar reasons, this Court is not convinced on the instant record that ACE American is likely to succeed on its tortious interference with contract claim.  Such a claim under New Jersey law requires that a party demonstrate, <u>inter alia</u>, that a party knowingly and intentionally interferes with a contract without justification.  <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1167 (3d Cir. 1993).  While at some later time, on a more extensive record, ACE American may be able to make such a showing with respect to Scottsdale, this Court cannot make such an inference at this time.  Mere submission of forms to state insurance agencies in order prior to entering into a line of business not indicia of the kind of maliciousness required for tortious interference with contract.  <u>Lightning Lube, Inc.</u>, 4 F.3d at 1167.  Utilizing a competitor's forms may be lazy, but unless those borrowed forms were put to some more suspect use or Scottsdale is shown to have known more than ACE American has presently shown, this Court cannot infer much more than laziness.

With respect to its false advertising claim this Court finds, similarly, that Plaintiffs have not demonstrated a sufficient likelihood of success.  A false advertising claim under the Lanham Act requires that some piece of advertising be false or misleading.  15 U.S.C. § 1125; U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 921 (3d Cir. 1990).  The alleged false or misleading advertising at issue on the instant motion is that Scottsdale has a website called "www.ERisk Services.com"; utilizes an email address containing the phrase "ERiskServices"; and placed certain marks, apparently belonging to WIA, on insurance filings and on its website.  (Pl. Br. at 25-26.)  ACE American alleges that these uses of WIA marks will mislead consumers of insurance into believing that E-Risk insurance is being provided by Scottsdale and not ACE American.  (Id. at 25.)  The other allegations made by ACE American, however, prove too much with respect to this allegation.  WIA has already announced that it intends to sell its assets, sans the Agency Agreement, to the current management of WIA.  (Compl. Ex. 10 at 1.)  Such a sale would, if it went forward, permit other insurance companies, to provide the Program Business insurance.  Additionally, ACE American asks that this Court infer that Scottsdale will be the partner of WIA's successor.  (Pl. Br. at 13.)  The advertising in question, if the Court made the inferences requested of it by ACE American, would simply have been disseminated in the reasonable expectation of entering a market currently occupied by a competitor, and not false or misleading.  The cases cited by ACE American in support of its likelihood of success on the false advertising claim are also inapposite.  There is no issue of Scottsdale attempting to confuse the marketplace of an officially licensed product, like the World Cup calling cards in Mastercard Int'l Inc. v. Sprint Commc'ns Co. L.P.. No. 94-1051, 1994 WL 97097, at *4 (S.D.N.Y. Mar. 23 1994).  Furthermore, there has been no showing that Scottsdale's

use of the E-Risk marks is likely to impact consumer choice. <u>Stiffel Co. v. Westwood Lighting Group</u>, 658 F. Supp. 1103, 1111 (D.N.J. 1987). <u>See</u> also <u>Mylan Pharm., Inc. v. Proctor & Gamble Co.</u>, 443 F. Supp 2d 453, 462 (S.D.N.Y. 2006) (requiring some showing of likelihood of customer confusion on summary judgment). ACE American is therefore not entitled to a temporary restraining order against Scottsdale.

        **3.**      **Irreparable Harm Caused by Breach of the Agency Agreement by WIA**

In order to satisfy the second requirement for injunctive relief, the movant must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir. 1989). Grounds for irreparable harm may exist where a moving party faces the loss of exclusive rights to distribute goods under a contract. <u>Premier Dental Prods. Co. v. Darby Dental Supply Co., Inc.</u>, 794 F.2d 850, 858-59 (3d Cir. 1986).

Plaintiffs allege that the diversion of their confidential information and property rights related to the Agency Agreement to Scottsdale will result in a loss of the business goodwill established as the sole provider of the Program Business insurance. (Pl. Br. at 28.) This Court agrees. The Third Circuit has found that goodwill inheres in a company's market reputation as the sole provider of a product, and the prospect of the loss of this status can irreparably harm that goodwill. <u>Premier Dental Prods. Co.</u>, 794 F.2d at 859. While this is not a trademark action, and is in that manner distinguishable from <u>Premier Dental</u>, this Court finds that the existence of the goodwill associated with ACE American's contractually exclusive right to the Program Business constitutes a prospective loss of goodwill that suffices to demonstrate irreparable harm on the current record. <u>See</u> also <u>BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.</u>, 229 F.3d 254, 263

(3d Cir. 2000) (injury to reputation difficult to calculate); Scholastic Funding Group, LLC v. Kimble, No. 07-557, 2007 WL 1231795, at *9 (D.N.J. Apr. 24, 2007) (Linares, J.) (industry reputation suffices for irreparable harm in contractual noncompete context).

### 4. Balancing the Harms and the Public Interest

The Court must next analyze the remaining prerequisites for imposition of preliminary injunctive relief: the possibility of harm to other interested persons from the grant or denial of the injunction and the public interest. Ortho Pharm., 882 F.2d at 812-13. The Court finds that the balance of the harms weighs in favor of Plaintiffs. The present context of the case indicates that ACE American is in substantial danger of losing its exclusivity rights it bargained for under the Agency Agreement, and that preservation of the status quo for the length of a temporary restraining order is more important for ACE American, which must execute its duties under the Agency Agreement at this time, than for WIA, as WIA is not apparently going to finalize its sale until September 30, 2008. (Def. Br. at 15; Compl. Ex. 10 at 1.)

Additionally, this Court finds that the public interest weighs in favor of Plaintiffs. While the public has an interest in free competition, its interest is also furthered by protection of private contractual rights. Wright Med. Tech., Inc. v. Somers, 37 F.Supp.2d 673, 684 (D.N.J. 1999) (noncompete context). Here, the public interest weighs in favor of temporary restraints against WIA in order to preserve the status quo, as reflected in the protection of exclusivity rights and confidential information in the Agency Agreement.

## **CONCLUSION**

  For the reasons set forth in this Opinion, Plaintiff's request for temporary restraints is granted in part and denied in part. An appropriate Order accompanies this Opinion.


DATED: September 4, 2008            /s/ Jose L. Linares
                             United States District Judge