NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, and WESTCHESTER FIRE INSURANCE COMPANY, <br><br>    Plaintiffs, <br><br>    v. <br><br> WACHOVIA INSURANCE AGENCY INC. D/B/A/ E-RISK SERVICES and SCOTTSDALE INSURANCE COMPANY, <br><br>    Defendants. | Civil Action No.: 08-4369 (JLL) <br><br> **OPINION** |

**LINARES, District Judge.**

This matter comes before the Court on the motion for reconsideration [CM/ECF #74] of Defendant Wachovia Insurance Agency, Inc. ("Wachovia") filed before this Court on October 24, 2008, and joined in by Defendant Scottsdale Insurance Co. ("Scottsdale") on October 27, 2008. Wachovia moves for reconsideration of a stay granted by this Court to Plaintiffs ACE American Insurance Company, Illinois Union Insurance Company, Westchester Surplus Lines Insurance Company, and Westchester Fire Insurance Company (collectively "Plaintiffs" or "ACE") on October 20, 2008 pursuant to Federal Rule of Civil Procedure 62(c). Also before the Court at this time is

1

ACE's motion to preclude the use of the Kransdorf and Thomas Declarations submitted by Wachovia [CM/ECF #81], filed on October 31, 2008.[1]

ACE, Wachovia, and Scottsdale are involved in a dispute over the future of a business unit of Wachovia's, E-Risk Services, with which ACE has done business for some time under the January 1, 2006, "Amended and Restated Agency Agreement for E-Risk Program Between [ACE] and [Wachovia]," (the "Agency Agreement"). Having recently issued two opinions detailing the relationship between these parties, this Court will not engage in further recitation of the factual background. ACE opened the current action by filing an order to show cause on September 2, 2008, which this Court granted in part and denied in part on September 4. This Court then held a hearing on the motions of ACE and Wachovia for preliminary injunctive relief, and issued its Opinion and Order terminating the prior TRO and granting some injunctive relief on October 17, 2008. ACE subsequently appealed this Court's preliminary injunction ruling on October 19, 2008, and made an informal application before this Court to stay the October 17 Order and restore the previous TRO pending appeal. This Court granted the stay on October 20, 2008, and the instant motion for reconsideration by Wachovia followed.

## DISCUSSION

As an initial matter, this Court finds that consideration of the Kransdorf and Thomas Declarations will not impermissibly supplement the record before the Court of Appeals, and may be considered on the instant motion. (ACE Br. at 13.) ACE overreads the cases it relies upon. In Union Pacific Railroad Co. v. Greentree Transportation

---

[1] To the extent ACE moved to amend or correct the stay granted on October 20, 2008, that issue has been rendered moot by the stipulations of the parties.

Trucking Co., the Court of Appeals found that the appellant was not entitled to argue any issues from its motion for reconsideration on appeal because it failed to amend its notice of appeal. 293 F.3d 120, 126, n.8 (3d Cir. 2002). Far from allowing that facts before the district court on reconsideration can be foreclosed by swiftly filing a notice of appeal, Greentree Transportation Trucking Co. stands for the proposition that a party is limited on its appeal to the issues it has raised. 293 F.3d at 126 n.8. Similarly, the unreported case of Mills v. Philadelphia Gas Works, 264 F. App'x 239, 241 (3d Cir. 2008) (unreported), stands for the unexceptional proposition that an appellate court is limited to the record before the trial court when it hears the appeal. This Court is well aware that it does not sit in appeal of its own preliminary injunction opinion, and that it does not rule on the application of the Rules of Appellate Procedure, but must instead apply the Rules of Civil Procedure and applicable precedent to the motion for reconsideration before it. The standard for a motion for reconsideration clearly contemplates a district court's consideration of additional facts. Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 678 (3d Cir. 1999) (contemplating use of new evidence on reconsideration). ACE's motion to preclude the Court's consideration of the Kransdorf and Thomas Declarations is therefore denied.

**A.     Reconsideration**

Federal Rule of Civil Procedure 59(e) provides that a party may file a motion with the Court to alter or amend a judgment within ten days of the entry of the judgment. Local Civil Rule 7.1(i) states that a motion for reconsideration "setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked" may be filed within ten business days after entry of an order.

L.Civ.R. 7.1(i).[2]  Reconsideration, however, is an extraordinary remedy and should be granted "very sparingly."  See L.Civ.R. 7.1(i) cmt.6(d); see also Fellenz v. Lombard Investment Corp., Nos. 04-3993, 04-5768, 04-3992, 04-6105, 2005 WL 3104145, at *1 (D.N.J. Oct. 18, 2005) (citing Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986)).  The motion may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached.  See, e.g., P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001).

There are three grounds for granting a motion for reconsideration:  (1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice.  See, e.g., Carmichael v. Everson, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004); Brackett v. Ashcroft, No. Civ. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003).

On reconsideration, Wachovia does not argue that there has been an intervening change in the law, but rather that the Court should consider evidence that was not before it when the stay order issued, and also that harm to Wachovia will occur if the stay is not withdrawn.  Carmichael, No. 03-4787, 2004 WL 1587894, at *1; Brackett, No. Civ. 03-3988, 2003 WL 22303078, at *2; Wachovia Br. at 9.  Wachovia seeks reconsideration of the October 20, 2008 stay granted by this Court because it was unable to present evidence to the Court on the following issues: "hardship and prejudice" Wachovia would suffer

---

[2] This rule was previously Local Civil Rule 7.1(g).

through reimposition of the September 4, 2008 TRO; that Wachovia's goodwill, reputation, volume, and market share were decreasing during the period the TRO remained in force; that current market conditions in the financial services sector were eroding the value of the E-Risk business; and that ACE's application was factually incorrect in stating that renewal business under the Agency Agreement would be diverted to Scottsdale. (Wachovia Br. at 2-3.)

Wachovia admits that its inability to present these arguments was caused by its failure to submit its responsive papers in time on October 20, 2008. (Wachovia Br. at 5.) Such a failure would ordinarily be sufficient to deny reconsideration, as the issues could have been raised prior to the Court's Order. P. Schoenfeld Asset Mgmt., L.L.C., 161 F. Supp 2d at 352; Iacono v. Mauger, No. 08-1197, 2008 WL 2945973, at *3 (D.N.J. July 29, 2008) ("It would turn motion practice on its head to permit counsel to ignore court-ordered deadlines."). This Court will, therefore, examine the motion as one brought to correct a factual error or prevent "manifest injustice."

The Third Circuit has indicated that the "manifest injustice" prong of reconsideration applies in cases where an argument is of "fundamental" importance. Max's Seafood Café ex rel. Lou-Ann, Inc., 176 F.3d at 678. In Max's Seafood, the Court of Appeals found that reconsideration was appropriate where the district court found a limited liability company in contempt despite the fact that it came into existence six months after the contemptible acts. 176 F.3d at 677-79 (citing a "clear error of law and fact"). In an unreported case, the Court of Appeals has granted reconsideration where a litigant was able to produce a viable legal argument with additional factual basis after the

appointment of counsel.  Panichelli v. General Elec. Co., 146 F. App'x 572, 573-74 (3d Cir. 2005) (unreported).

This Court finds that on the instant motion, reconsideration is necessary.  The facts in this case are constantly being revealed in greater detail.  Compare Op. of Sept. 4, 2008 (granting temporary restraints based on state agency filings) with Op. of Oct. 17, 2008 (finding that preliminary injunction based upon state agency filings not warranted). This Court shortened the briefing schedule for ACE's October 20, 2008 motion to stay to a period of 2.5 hours, and Wachovia did not submit its response until approximately 30 minutes after that time had passed.  This Court finds, as shown in the analysis infra, that granting the stay based upon only the moving papers of ACE and the timely submission of Scottsdale created a decision based in part on deficient factual record and resulted in manifest injustice to Wachovia.  Compare Iacono, No. 08-1197, 2008 WL 2945973, at *1-3 (reconsideration denied where party failed to respond to motion despite receiving two extensions for a total of ten weeks).  While this Court is aware that reconsideration should only be granted sparingly, Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D.Pa. 1995), and that the facts in this case are not as extreme as those in Max's Seafood, this is one of the rare occasions that calls for such extraordinary relief. 176 F.3d at 677-79.

**B.    The Stay Pending Appeal**

Although this Court would normally be divested of jurisdiction because the October 17, 2008 Order granting preliminary injunctive relief is presently before the Court of Appeals, Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982), granting a stay or modification of an injunction pending appeal falls within an exception

to the rule of Griggs.  Sheet Metal Workers' Intern. Ass'n Local 19 v. Herre Bros., Inc., 198 F.3d 391, 394 (3d Cir. 1999).

Most judgments are subject to an "automatic" 10-day stay.  Fed. R. Civ. P. 62(a). Orders granting injunctive relief are excluded from this 10-day stay, and the District Court may, at its discretion, "suspend, modify, restore or grant an injunction" under Federal Rule of Civil Procedure 62(c).  Fed. R. Civ. P. 62(a)(1), 62(c).  The standard applied within the Third Circuit to staying a judgment pending appeal is an individualized analysis utilizing four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991).

### 1. Likelihood of Success and Irreparable Harm

Wachovia argues that ACE did not meet its burden as to its likelihood of success on appeal for several reasons.  (Wachovia Br. at 11.)  First, it claims that ACE did not argue in its stay motion that this Court abused its discretion or that its factual findings were clearly erroneous; secondly, Wachovia maintains that ACE's claim is false that this Court never addressed the issue of whether Wachovia breached the Agency Agreement when discussing the potential sale of the E-Risk assets with Scottsdale; and Wachovia further reasons that this Court found in its October 17 Opinion that ACE was not entitled to injunctive relief on any issue but future disclosure of confidential information, and that ACE should not, therefore, be entitled to a stay granting it broader injunctive relief.  (Id.

at 11-16.) Regardless of whether Wachovia's contentions are accurate, they rely upon the positions this Court took when the preliminary injunction motions were before it. The posture of the irreparable harm analysis is slightly different on consideration of a stay from that in the original injunctive relief analysis, despite the fact that the factors appear to be identical. Once an appeal has been filed, this Court must be aware that the status quo may require protection should the appealing party prevail. AARP v. E.E.O.C., 390 F. Supp 2d 437, 462-63 (E.D. Pa. 2005) (finding that preservation of the status quo important issue in grant of stay that may lessen showing required for likelihood of success).

      ACE urges this Court to recognize that the status quo must be protected through its arguments that the proposed asset sale could not be unscrambled afterward and to ensure that ACE's appeal is not rendered moot. (ACE Opp. Br. at 5-6.) ACE has also previously alleged that it will succeed on appeal through challenging this Court's interpretation of the "exclusivity" provisions of the Agency Agreement providing that Wachovia work solely with ACE. (ACE Stay Br. at 7.) Additionally, although it does not presently couch the argument as directed at the likelihood of success, this Court finds that ACE's loss of goodwill argument is properly considered under this factor of the stay analysis as going both to likelihood of success and irreparable harm. (ACE Opp. Br. at 7-8.)

      This Court previously found that the "exclusivity" language in the Agency Agreement had to be read in light of other language in the Agency Agreement providing flexibility in the event of an asset sale. (Op. of Oct. 17, 2008 at 18-19, 30.) While ACE is incorrect when it claims that this Court did not address this issue, ACE has still

8

enunciated a colorable appellate issue.  On appeal, this Court's construction of the Agency Agreement will be reviewed de novo, and ACE could certainly prevail in urging its construction of the Agency Agreement at the appellate level.  Williams v. Metzler, 132 F.2d 937, 946-47 (3d Cir. 1997).  Similarly, ACE made its goodwill and reputation arguments at the preliminary injunction stage, and this Court found, instead, that the ACE/Wachovia relationship was one characterized by calculable economic harm rather than irreparable loss of goodwill, the resolution of the issue on appeal may well be different.  (Op. of Oct. 17, 2008 at 16-17.)

A colorable issue, however, is not what is required for a stay pending appeal.  The party arguing for the stay must demonstrate a substantial likelihood of success.  Republic of Philippines, 949 F.2d at 658.  This factor can be moderated by a showing of irreparable harm, as such harm can lower the likelihood of success required for imposition of a stay.  In re Finova Group, No. 07-480, 2007 WL 3238764, at *1 (D. Del. Oct. 31, 2007).

ACE asserted in its stay motion that if the sale of the Wachovia E-Risk assets goes forward, and ACE later prevails, it will be impossible to "unscramble the eggs" of the ensuing insurance agreements after the corporate transaction.  (ACE Stay Br. at 5.)  It renews these arguments on the instant motion.  (ACE Opp. Br. at 5-6.)  Courts have applied the "unscrambling the eggs" analogy to the difficulty of unwinding tender offers and other corporate transactions.  See, e.g., Ronson Corp. v. Liquifin Aktiengesellschaft, 483 F.2d 846, 851 (3d Cir. 1973) (tender offer); Baron v. Strawbridge & Clothier, 646 F. Supp. 690, 697 (E.D. Pa. 1986) (shareholder-director dispute).  Although this Court has already found that any harm to ACE beyond the loss of its confidential information

9

would be calculable as damages, ACE claimed that unwinding the insurance agreements that would ensue once Scottsdale begins writing the E-Risk business, should ACE ultimately prevail, could undermine the goodwill ACE established in the marketplace as the carrier of E-Risk insurance. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000) (finding that reputational injury is difficult to calculate); Op. of Oct. 17, 2008 at 16; ACE Stay Br. at 5; ACE Opp. Br. at 7-8.  Courts have addressed the "unscrambling the eggs" argument in more complicated situations than this and found it unavailing.  For example, the FTC failed to receive an injunction pending appeal where it claimed that a merger-acquisition violated the antitrust laws. Federal Trade Comm'n v. Equitable Res., Inc., No. 07-490, 2007 WL 1500046, at *6-7 (May 21, 2007).  The court in Equitable Resources, Inc. found that the FTC had not provided a detailed enough rationale why the merger could not be unwound. Federal Trade Comm'n, No. 07-490, 2007 WL 1500046, at *6-7.  Similarly, here, while ACE argued that it would be too complicated to deal with a situation where E-Risk policies were underwritten by ACE or by Scottsdale, rather than just one insurer, it provided no clear rationale why such a situation would be one in which the eggs were too scrambled for sense to be made of the situation.  (ACE Stay Br. at 5; ACE Opp. Br. at 5-6.)  Each policy would be assigned to and endorsed by its respective carrier, and the possibility that Scottsdale might no longer be the E-Risk carrier at some later date could be dealt with when necessary, according to the terms of the individual policy.  The cases cited by ACE concern corporate control contests of various sorts, and are distinguishable from this situation, which only concerns whether E-Risk will be in an agency relationship with ACE or with Scottsdale. Ronson Corp., 483 F.2d at 851 (3d Cir. 1973) (dispute

concerning prospective tender offer); Baron v. Strawbridge & Clothier, 646 F. Supp. 690, 697 (E.D. Pa. 1986) (shareholder-director dispute over common stock voting rights); Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 254, 261 (2d Cir. 1989) (foreign tender offer impacting market domination); Miller v. LeSea Broad., Inc., 927 F. Supp. 1148, 1152 (E.D. Wis. 1996) (sale of television station stayed where danger existed of intervening sale prior to appellate decision).  Of the cases cited by ACE, only Miller concerned an asset that might again change hands prior to the appellate decision, similar to the E-Risk business that would go to Scottsdale if the E-Risk asset sale is consummated. 927 F. Supp. at 1152.  The asset in Miller, however, was a single television station.  Id.  Here, the Court does not have before it a single, large asset that is federally regulated and in short supply, but the pool of business done by E-Risk.  This Court finds that the brief period of time between consummation of the asset sale and the outcome of the expedited appeal in this case does not present the same kind of danger as the situation in Miller, and that only a limited amount of the E-Risk business will become intertwined with Scottsdale should ACE succeed on appeal.  Similarly, the same argument demonstrates that ACE's appeal will not be moot at arbitration if the sale takes place: while the entire status quo, of course, might not be restored due to a brief period of intervening E-Risk/Scottsdale business, ACE will still be able to make arguments at arbitration concerning its loss, for example, due to the E-Risk/Scottsdale sales that would otherwise have accrued to ACE. ACE has not, therefore, sufficiently demonstrated that it has a great likelihood of success or would suffer the requisite irreparable harm to receive the extraordinary relief of a stay pending appeal based upon its "unscrambling the eggs" or mootness arguments.

## 2. Injury to Other Parties

Wachovia also asserts that it will suffer irreparable harm if the stay is not lifted in its reconsideration brief. (Wachovia Br. at 18-22.) Wachovia cites this Court's October 17, 2008 Opinion for the propositions that it will suffer irreparable harm if ACE is permitted to continue diminishing the value of E-Risk Services by violating the non-solicitation and non-compete provisions of the Agency Agreement. (Id. at 18-20.) Furthermore, Wachovia claims that ACE is denying coverage and product features, described as "wage and hour cover endorsement[s]," to E-Risk insurance agreements, eroding the E-Risk business. (Id. at 20.) The Kransdorf Declaration submitted by Wachovia clarifies that ACE was in the practice of endorsing some insurance on E-Risk policies outside the four corners of the Agency Agreement, and that this practice has stopped. (Kransdorf Dec. ¶¶ 8-14.) Wachovia also notes that the sale price of the E-Risk assets is based on premium volume, and that actions by ACE to deny coverage lower premium volume. (Wachovia Br. at 21.) Finally, Wachovia argues that deteriorating financial market conditions also make removing any impediments to the asset sale necessary, as a long delay might cause Wachovia to "lose the deal." (Id. at 22.)

Wachovia's claim that lost profits and a decrease in sale price of the E-Risk assets constitute irreparable harm is dubious. This Court already found, in its October 17, 2008 Opinion, that lost sales do not constitute irreparable harm in the context of this business relationship. Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988); Op. of Oct. 17, 2008 at 16. To the extent that lost premium volume determines the sale price of E-Risk, that loss would also appear to be calculable as money damages. See, e.g., Kransdorf Dec. ¶ 4 (giving precise calculations of market loss

12

for E-Risk during 2008). Furthermore, ACE disputes that the E-Risk premium volume is decreasing. (ACE Opp. Br. at 11.) The only harm Wachovia claims to itself that could be irreparable, therefore, is the loss of the sale transaction itself. While such a lost opportunity might, indeed, constitute irreparable harm, Wachovia has not asserted anything more than a conjecture that such a scenario might occur in its brief and the Thomas Declaration. (Wachovia Br. at 22; Thomas Dec ¶¶ 6-7.) A court may not grant injunctive relief based on harm that is purely speculative, and courts have applied the same rule to the granting of stays. Adams v. Freedom Forge Corp., 204 F.3d 475, 488 (3d Cir. 2000); Berne Corp. v. Government of the Virgin Islands, No. 2000-141, 2008 WL 4371518, at *5 n.5 (D.V.I. Sept. 18, 2008).

Wachovia, however, need not show irreparable harm to defeat ACE's motion for a stay; the Court need only find that it would be so substantially harmed that the stay should not issue. Republic of Philippines, 949 F.2d at 658. Here, Wachovia has provided evidence that the E-Risk assets are declining in value on the accounting basis on which the sale will be priced, and that Wachovia has a substantial interest in consummating a sale as soon as possible in order to gain the highest price it can. (Kransdorf Dec. ¶ 4 (asserting 6% decline in E-Risk premium volume in 2008).) Given both the declining premium volume and the loss of additional sale opportunities due to ACE's new coverage restrictions, Wachovia has demonstrated that it will suffer substantial harm due to the stay.

### 3. Public Interest

In arguing that vacating the stay is in the public interest, Wachovia looks to this Court's October 17, 2008 Opinion and refers to its finding that the public interest is

served by enforcement of contractual duties.  Wright Med. Tech., Inc. v. Somers, 37 F. Supp 2d 673, 684 (D.N.J. 1999); Op. of Oct. 17, 2008 at 18; Wachovia Br. at 22.  This public policy does not support the continuation of the September 4, 2008 TRO, as this Court found on October 17, 2008 that portions of that TRO were unsupported by the evidence before the Court and that the relief granted on October 17, 2008, was all that was warranted under this Court's construction of the parties' relationship and the Agency Agreement.

This Court, furthermore, found in its October 17, 2008, Opinion that the Agency Agreement contemplated an asset sale, contrary to the claims of ACE in its instant opposition brief.  (Op. of Oct, 17, 2008 at 18; ACE Opp. Br. at 7.) The public interest, therefore, does not weigh in favor of continuing a stay that is contrary to the contractual duties agreed upon between the parties.   Wright Med. Tech., Inc., 37 F. Supp 2d at 684.  As this Court finds, on reconsideration, that all of the factors in determining whether to grant a stay weigh against the stay granted on October 20, 2008, Wachovia's motion for reconsideration is granted.

## CONCLUSION

For the reasons heretofore given, Wachovia's motion for reconsideration is granted.  An appropriate Order accompanies this Opinion.


DATED: November 18, 2008                   /s/ Jose L. Linares
                                           United States District Judge

14